THE PEOPLE *ex rel.* Michael J. Morrison

*v.*

DEWITT C. CREGIER, Mayor.

*Filed at Ottawa October 31, 1891.*

| 138 | 401 |
| 147 | 536 |
| 138 | 401 |
| 50a | 115 |
| 138 | 401 |
| ·162 | 504 |
| ·162 | 544 |
| 138 | 401 |
| 163 | 275 |
| 138 | 401 |
| 85a | 68 |
| 138 | 401 |
| 183 | 113 |
| 183 | 642 |
| 138 | 401 |
| 183 | 642 |
| 185 | 314 |
| 185 | 316 |
| 138 | 401 |
| 186 | ²569 |
| 186 | ²570 |
| 186 | 577 |
| 138 | 401 |
| 92a | ¹⁰647 |
| f92a | ⁹649 |
| f92a | ¹⁰650 |
| f92a | ¹⁰652 |
| 138 | 401 |
| 191 | ¹⁰263 |
| 191 | ⁹265 |
| 191 | ⁹267 |
| 191 | ⁹270 |
| 97a | ¹⁰426 |
| 97a | ⁸427 |
| 138 | 401 |
| 199 | ¹¹ 55 |
| 138 | 401 |
| 200 | ¹¹322 |
| 103a | ¹¹257 |
| 138 | 401 |
| 203 | ⁵131 |
| 203 | ³240 |
| 138 | 401 |
| 211 | 39 |

1. INTOXICATING LIQUORS—*power to regulate the sale.* The statute confers upon municipal corporations the power to license, regulate and prohibit the sale of intoxicating liquors, those powers being given, not in the alternative, but cumulatively, and to be exercised concurrently whenever the municipal authorities, in their discretion, see fit to exercise them.

2. The power to license, regulate and prohibit the sale of intoxicating liquors must be exercised by a city or village by means of an ordinance passed by the proper municipal authorities. The mere legislative grant of this power does not, of itself, authorize the corporate authorities to issue licenses. The power is dormant until called into exercise by appropriate municipal legislation.

3. SAME—*ordinance licensing the sale, in part of village—whether reasonable.* An ordinance of a village which authorizes the grant of licenses to keep so many dram-shops, etc., outside of prohibted districts as the board may think the public good requires, and which creates certain districts within which no licenses shall be granted, is not unreasonable, and is not obnoxious to the charge of creating monopolies. Partial prohibition within the limits of a village or city will not render the ordinance invalid. By subdivision 46 of section 1, article 5, of the general Incorporation law for cities and villages, the city council or board of trustees is empowered to provide by ordinance for granting licenses to keep dram-shops in a part of the territory of the city or village, and at the same time prohibit the keeping of dram-shops in the residue of the territory.

4. By passing a general ordinance, municipal authorities may determine when, to whom and under what circumstances licenses may be granted, and if such ordinance is not unreasonable, the power of the executive officers of the city or village to issue licenses will thereafter be controlled and measured by its terms. If no discretion is reserved in relation to the number or location of the dram-shops to be licensed, then none can be exercised, and the duty becomes mandatory upon the executive officers to issue licenses to all applicants who comply with the prescribed terms.

5. SAME—*right to sell—policy of prohibition—how enforced.* The right to engage in the business of selling intoxicating liquors by retail

26—138 ILL.

can no longer be claimed as a common law right, but is a right which can be exercised only in the manner and upon the terms which the statute prescribes. Hence, the refusal to license deprives no man of any personal or property right, but merely deprives him of a privilege which it is in the discretion of the municipal authorities to grant or withhold. It also follows that the policy of prohibition requires no affirmative act on the part of the authorities authorized to provide for licensing.

6. SAME—*authority to issue license to sell.* Where the ordinance of a city provides that the mayor shall grant licenses to all persons applying therefor, upon their furnishing sufficient evidence that they are persons of good character, and offering to give the required bonds and to pay the prescribed license fee, the mayor will have no discretion to refuse a license to any applicant who is able to comply with the terms of the ordinance.

7. If, on the other hand, a discretion is reserved as to the number or location of the dram-shops to be licensed, such discretion may be exercised by the officers charged with the duty of issuing licenses; and if the ordinance restricts the location of dram-shops to certain portions of the city or village limits, said officers will have no power to issue licenses except in obedience of such restrictions.

8. The reservation of a discretion in an ordinance as to the number of licenses to be granted is valid, and is clearly a reasonable exercise of the power over that subject given by statute to municipal boards; but the court is not to be understood as holding that a board of trustees may, by resolution, merely, license one person and refuse to license another having precisely the same qualifications and local surroundings. The refusal to license must not be the offspring of mere caprice.

9. SAME—*after annexation—ordinances relating to dram-shops in annexed territory.* The law providing for the annexation of the territory of a village to a city saves in force the ordinances of the village relating to dram-shops, until they are done away with by a vote of those living in the annexed territory, and such law is a valid enactment.

10. In the absence of countervailing legislation, on the annexation of a village with an adjoining city, the ordinances of such city will, *eo instanti,* of their own vigor, extend to and become operative over the annexed territory; but if the city, before the annexation, passes an ordinance restraining the effect of its existing ordinances in relation to licensing dram-shops, so as not to grant licenses in such village where it is prohibited by the ordinances of such village, such restraining ordinance will control.

11. MUNICIPAL ORDINANCES—*presumption of reasonableness.* Municipal ordinances, to be valid, must not be unreasonable. The presumption, however, is in favor of their validity, and it is therefore incumbent

on those seeking to have them set aside as unreasonable, to point out or show wherein such unreasonableness consists.

12. SAME—*impeachment for fraud—motive in passing.* The judicial department of the government will not inquire into the motives of the legislative department in the enactment of laws; and this rule applies also to ordinances and other legislative acts of municipal corporations, with, perhaps, the qualification that municipal ordinances may be impeached for fraud, at the instance of persons injured thereby.

APPEAL from the Circuit Court of Cook county; the Hon. S. P. McCONNELL, Judge, presiding.

Mr. C. M. HARDY, and Mr. F. W. COOMBS, for the appellant:

The law of this State regards the sale of intoxicating liquors as a common law right. (*Hawthorn* v. *People,* 109 Ill. 308; *Swarth* v. *People,* id. 626; *Zanone* v. *Mound'City,* 103 id. 552.) All statutes in derogation of that right are to be strictly construed. *Bank* v. *McCrea,* 106 Ill. 281; *Hanchett* v. *Weber,* 17 Ill. App. 117.

The settled policy of this State is to license and regulate, and not prohibit, the sale of intoxicating liquors. It must be placed on the same footing and dealt with as any other lawful business. *Zanone* v. *Mound City,* 103 Ill. 552.

The law of this State is well settled that municipal corporations can exercise no power except for public good. *Mather* v. *Ottawa,* 114 Ill. 659; *Gaddis* v. *Richland,* 92 id. 123; *Mix* v. *Roos,* 57 id. 125; *Huesing* v. *City,* 128 id. 465; *Hickey* v. *Railroad Co.* 6 Bradw. 179.

Ordinances must therefore be consistent with public legislative policy. (*Law* v. *People,* 87 Ill. 395; *People* v. *Maynard,* 14 id. 419.) They must be reasonable and lawful, and must not be oppressive. (*Tugman* v. *Chicago,* 78 Ill. 407; *Chicago* v. *Rumpff,* 45 id. 90; *Dental Examiners* v. *People,* 123 id. 241.) They must be impartial, fair and general. (*Tugman* v. *Chicago,* 78 Ill. 407; *Chicago* v. *Rumpff,* 45 id. 90; *Dental Examiners* v. *People,* 123 id. 241; *Henze* v. *People,* 92 id. 426.) They may regulate, but they can not restrain, trade. (*Chicago*

v. *Rumpff,* 45 Ill. 90.) They must not contravene common right. (*Poyer* v. *DesPlaines,* 18 Ill. App. 225.) They can not make an act done by one, criminal, and by another lawful, under precisely like conditions and circumstances. (*Tugman* v. *Chicago,* 78 Ill. 407; *Concordia Association* v. *Railroad Co.* 121 id. 199; *Zanone* v. *Mound City,* 103 id. 552; 11 Ill. App. 335.) They must not tend to create monopolies as to either place or person. *Tugman* v. *Chicago,* 78 Ill. 407; *Chicago* v. *Rumpff,* 45 id. 90.

When the duty is plain *mandamus* will lie. *People* v. *Pearson,* 2 Scam. 189; *Zanone* v. *Mound City,* 103 Ill. 552; *Ottawa* v. *People,* 48 id. 233; *Council* v. *People,* 78 id. 382.

The doctrine is the same in other States. *Chase* v. *Canal Co.* 20 Pick. 484; *People* v. *Judge,* 1 Mich. 359; *People* v. *Green,* 64 N. Y. 499; *Ex parte Crane,* 4 Pet. 190; *Drexel* v. *Mann,* 2 Pa. St. 286; *Ex parte Trapnall,* 6 Ark. 9; *Ex parte Lowe,* 20 Ala. 330; *State* v. *McArthur,* 13 Wis. 407; *Davis* v. *Carter,* 18 Tex. 400; *Costello* v. *Circuit Court,* 28 Mo. 259; *Stafford* v. *Bank,* 17 How. 275; *Cowen* v. *Doddridge,* 22 Gratt. 458; *Insurance Co.* v. *Wilson,* 8 Pet. 291; *Ex parte Railroad Co.* 5 Wall. 825; *United States* v. *Peters,* 5 Cranch, 115; *State* v. *Knight,* 46 Mo. 83; *Ex parte Keeling,* 50 Ala. 474; *State* v. *Common Pleas,* 38 N. J. L. 182; *Clark* v. *Minnis,* 50 Cal. 509; *Hull* v. *Supervisors,* 19 Johns. 259; *People* v. *Judges,* 20 Wend. 668; *People* v. *Judges,* 13 How. 277; *Burnett* v. *Auditor,* 12 Ohio, 44; *Magruder* v. *Swan,* 25 Md. 173; *State* v. *Chase,* 5 Ohio St. 528; *Hawkins* v. *County Comrs.* 14 Ind. 521; *Hall* v. *Selectmen,* 39 N. H. 511; *Treat* v. *Middleton,* 8 Conn. 243; *Commonwealth* v. *Pittsburg,* 34 Pa. St. 496; *St. Luke's Church* v. *Slack,* 7 Cush. 226; *Sedberry* v. *Commissioners,* 66 N. C. 486; *State* v. *Kirkly,* 29 Md. 85; *Ball* v. *Lappins,* 3 Ore. 55; *Nye* v. *Richards,* 15 La. Ann. 603; *Page* v. *Hardin,* 6 B. Mon. 648; *Nelson* v. *Justices,* 1 Cold. 207.

Messrs. JONAS HUTCHINSON, and Mr. H. H. MARTIN, for the appellee:

The ordinance of the village was valid. That the village might confine the liquor traffic to certain portions of its territory, see Rev. Stat. chap. 24, art. 5, sec. 63, clauses 46, 48, 75, 78, 96; *In re Wilson,* 3 Minn. 145; *United States* v. *Commissioners,* 6 Mackey, 409; *Ex parte Byrd,* 84 Ala. 17.

So, also, ordinances prohibiting the sale of meats in certain localities within a city are valid. *St. Louis* v. *Jackman,* 25 Mo. 37; *Buffalo* v. *Webster,* 10 Wend. 100.

Ordinances establishing fire limits, and prohibiting the erection of wooden buildings in particular portions of a municipality, have repeatedly been held valid. *King* v. *Davenport,* 98 Ill. 305; *Klingen* v. *Bichel,* 117 Pa. St. 326; *McCloskey* v. *Kreling,* 76 Cal. 511; *Knoxville* v. *Bird,* 12 Lea, 121. See, also, *Mullen* v. *Commissioners,* 89 N. C. 161, and see *supra* the enumeration in the opinion of the court in *In re Wilson,* 32 Minn. 145, of other instances in which power "to regulate" a business has been held to authorize the confining of it to specified localities.

No one has a right to engage in the liquor traffic without license. The legislature may absolutely prohibit the traffic. *Mugles* v. *Kansas,* 123 U. S. 623; *Kidd* v. *Pearson,* 128 U. S. 1; *Stickwood* v. *Commissioners,* 86 Ky. 285.

Section 18 of the Annexation act is constitutional. *McGurn* v. *Board,* 133 Ill. 122; *O'Leary* v. *Cook County,* 28 id. 534; *Neifing* v. *Pontiac,* 56 id. 175; *Erlinger* v. *Boneau,* 51 id. 94; *People* v. *Hazelwood,* 116 id. 319; *Prescott* v. *Chicago,* 60 id. 121; *Guild* v. *Chicago,* 82 id. 472; *Abington* v. *Cabeen,* 106 id. 200; *Potwin* v *Johnson,* 108 id. 70.

These objections to the constitutionality of the act are, it seems to us, sufficiently met by the reasoning in the cases upholding local option and similar statutes,—*e. g.,* statutes requiring the applicant for a liquor license to present an ap-

plication signed by the majority of the registered voters of the district where he proposes to sell liquor, or signed by a certain number of the residents nearest the proposed place of business. *Groesch* v. *State*, 42 Ind. 547; *Paul* v. *Gloucester*, 21 Broom, 585; *State* v. *Hunter*, 38 Kan. 578; *Coldwell* v. *Barrett*, 73 Ga. 604; *State* v. *Pond*, 93 Mo. 606; *Schulben* v. *Bordeaux*, 64 Miss. 59; *Lemon* v. *Paynter*, id. 161; *Weil* v. *Calhoun*, 25 Fed. Rep. 865; *State* v. *Berlin*, 21 S. C. 492; *Ex parte Swann*, 96 Mo. 44; *State* v. *Brown*, 19 Fla. 563; *Rohrbacher* v. *Jackson*, 51 Miss. 735; *Jones* v. *Hillard*, 69 Ala. 300; *Rogers* v. *Hahn*, 63 Miss. 679; 11 Am. and Eng. Ency. of Law, 583, 592, 656, 661.

Mr. JOHN N. JEWETT, and Mr. HENRY V. FREEMAN, also for the appellee:

As to the power of the village trustees to pass such an ordinance, see Incorporation act, art. 5, pars. 46, 59, 75, 84; *Gunnarssohn* v. *Sterling*, 92 Ill. 574.

The legislature has authority, under the constitution, to confer the power to declare what shall be a nuisance upon municipal corporations, as it did in paragraph 75 of section 1 of article 5, above referred to. *Roberts* v. *Ogle*, 30 Ill. 461; *Railway Co.* v. *Lake View*, 105 id. 210.

The municipal authorities of Hyde Park properly exercised this power when they declared the sale of liquors within the prohibited territory described in section 21 to be a nuisance, as they did do by the passage of section 12, chapter 12, of their Revised Ordinances.

But we are not left to reason solely upon principle in maintaining the validity of these ordinances creating such prohibited districts. Such ordinances have been substantially sustained by this court, and have been directly sustained by courts in some other States. *Dingman* v. *People*, 51 Ill. 280; *East St. Louis* v. *Wehrung*, 46 id. 392; *Village of Braceville* v. *Doherty*, 30 Ill. App. 654; *State* v. *Kautler*, 33 Minn. 969.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

This was a proceeding, in the name of the People of the State of Illinois, on the relation of Michael J. Morrison, for a *mandamus*, ordering and requiring DeWitt C. Cregier, mayor of the city of Chicago, to issue to the relator a license to keep a dram-shop at number 5626, Lake avenue, in said city. The petition sets out *in extenso* the various ordinances of said city in relation to licenses to keep dram-shops then in force, consisting of an ordinance passed April 18, 1881, and certain amendments thereto passed February 14, 1884, May 4, 1885, and March 31, 1886, said ordinances containing, among other things, the following provisions:

"The mayor of the city of Chicago shall, from time to time, grant licenses for the keeping of dram-shops within the city of Chicago to any person who shall apply to him in writing, upon said person furnishing sufficient evidence to satisfy him that he or she is a person of good character, and upon such person executing to the city of Chicago a bond, with at least two sureties, to be approved by the mayor, in the sum of $500, conditioned that the licensed party shall faithfully observe and keep all ordinances now in force or hereafter to be passed during the period of such license, and that he will keep closed on Sunday all doors opening out upon any street from the bar or room where such dram-shop is kept, and that all windows opening upon any street from such bar or room shall, Sundays, be provided with blinds, shutters or curtains, so as to obstruct the view from such street into such room. Every person, on compliance with the aforesaid requirements, and the payment in advance to the city collector at the rate of $500 per annum, shall receive a license, under the corporate seal, signed by the mayor and countersigned by the clerk, which shall authorize the person or persons therein named to keep a dram-shop, to sell, give away or barter intoxicating liquors, in quantities less than one gallon, in the place designated in the license."

The petition, which was filed July 22, 1890, alleges that the defendant had been duly elected and qualified as mayor of said city and was then discharging the duties of said office; that the relator was of good character; that on the 17th day of July, 1890, the relator, being desirous of obtaining a license from said city to keep a dram-shop at the place above mentioned, presented to the defendant, as such mayor, an application in writing for such license, verified by his affidavit, and also proper and sufficient proof that the relator was of good character and a fit and suitable person to be intrusted with such license, and tendered to said mayor his two bonds, each with good and sufficient sureties, one in the penal sum of $500, payable to said city, and conditioned as required by said ordinances, and the other in the penal sum of $3000, payable to the People of the State of Illinois, and conditioned as required by the statute in relation to dram-shops, and in all respects complied with all the provisions of said ordinances and statute in that behalf, and thereby became entitled to have said mayor pass upon said application for a license, and determine whether the relator was of good character, and accept and approve said bonds, and issue to the relator a license to keep a dram-shop at the place aforesaid; but that said mayor then refused and has since wholly refused to receive or hear any evidence of the good character of the relator or to pass upon that question, or to accept or approve said bonds, or to issue to the relator the license thus applied for. The petition prays that said mayor be required and commanded to proceed with the performance of his duty in these various respects, and to issue said license.

The defendant by his answer alleges, in substance, that the premises known as 5626, Lake avenue, are situated within the corporate limits of what was formerly the village of Hyde Park, which, prior to its annexation to the city of Chicago, was a village organized under the general law for the incorporation of cities, towns and villages, approved April 10, 1872;

that under and in pursuance of the "Act to provide for the annexation of cities, incorporated towns and villages, or parts of the same, to cities, incorporated towns and villages," approved and in force April 25, 1889, an election was held on the 29th day of June, 1889, in the city of Chicago and in the village of Hyde Park, whereby the whole of said village was annexed to and became a part of said city and now constitutes a part thereof; that March 28, 1887, and prior to said annexation proceedings, the president and board of trustees of said village passed an ordinance in relation to dram-shops, which was in full force at the time said annexation took place, sections 1, 6 and 12 of which were as follows:

"SECTION 1. The selling or giving away of any intoxicating, malt, vinous, mixed or fermented liquor, in quantities less than four gallons in any one package, except by persons duly licensed in accordance with the provisions of this ordinance, is hereby prohibited."

"Sec. 6. The president and board of trustees, by resolution, may grant licenses to keep so many dram-shops, saloons or beer-wagons in the village of Hyde Park, outside of prohibited districts, as they may think the public good requires, but they expressly reserve the power to revoke any license at their discretion; and, whenever revoked for any violation of the laws of the United States or the State of Illinois, or ordinances of the village of Hyde Park, whether passed before or after the date of such license, the license fee shall be forfeited to the village of Hyde Park."

"Sec. 12. All places where intoxicating liquor is sold in violation of any provision of this ordinance shall be taken, held and declared to be common nuisances; and all rooms, taverns, eating-houses, liquor or beer-wagons, cellars or other places of public resort where intoxicating liquors are sold in violation of any provision of this ordinance shall be deemed public nuisances, and no person shall keep any such place as afore-

said, by himself, his agent or servant, and the same may be abated as provided in this chapter."

Section 21 of said ordinance created and described certain districts within said village and provided that thereafter no license should be issued to keep a saloon or dram-shop within the territory embraced in said districts, but that said territory should be known and treated as prohibited districts, within which it should not be lawful for such license to be granted. The answer alleges that the premises known as 5626, Lake avenue, were embraced within one of said prohibited districts.

Said answer also sets up and relies upon section 18 of said Annexation Act, which is as follows:

"When a part or the whole of an incorporated town, village or city is annexed, under the provisions of this act, to another city, village or incorporated town, and prior to such annexation an ordinance was in force prohibiting the issuing of licenses to keep dram-shops within said territory so annexed, or any part thereof, or providing that such license shall not be issued except upon petition of a majority of the voters residing within a certain distance of such proposed dram-shops, then such ordinance shall continue in full force and effect notwithstanding such annexation: *Provided*, the city council or board of trustees, as the case may be, may, on petition of one-fourth of the voters of the territory over which said ordinance extends, submit at an annual municipal election, but not oftener than every other municipal election, the question to the voters of such territory whether or not an ordinance shall be passed authorizing the issuing of dram-shop licenses for such territory: *And provided further*, that upon petition, in such case, of one-fourth of the voters within any part of said annexed territory not less than one-half square mile in extent, asking that any such ordinance shall be continued in force in said portion of said annexed territory, said question of issuing dram-shop licenses shall be submitted separately to the voters of said portion of said annexed territory, and if a majority of

the voters voting on such question vote against dram-shops, then said ordinance shall continue in force in said portion of said territory, otherwise not. The ballots cast at such election shall be written or printed, or partly written and partly printed, 'For dram-shops,' or 'Against dram-shops,' respectively, and shall be received, canvassed and returned the same as ballots cast at said election for municipal officers; and if it shall appear that a majority of the voters so voting upon the question, 'For dram-shops,' then licenses may be issued for such territory on the same terms and conditions as licenses are granted by ordinance within other parts of the municipality. It is intended by this section to continue in full force and effect all ordinances of any municipality, the whole or part of which is annexed to another city, incorporated town or village, whereby the licensing of dram-shops is prohibited or regulated in said city, village or incorporated town, or any part thereof, without the voters of the territory so affected consent, as hereby provided, to the repeal of said ordinance by the city, village or incorporated town to which the territory was annexed."

Said answer further alleges that, by said section of said act, said ordinance of the village of Hyde Park was continued in force, notwithstanding the annexation of said village to said city. Also, that no steps have been taken under the provisions of said section in relation to the submission to the voters of said prohibited districts the question of issuing dram-shop licenses for said districts, and that the voters of said districts have in no·manner consented to the repeal by the city of Chicago of the ordinance creating said districts.

The answer also alleges that, on the 17th day of June, 1889, which was prior to said annexation, the city council of the city of Chicago passed the following ordinance:

"SEC. 1. That, when any territory has heretofore or shall hereafter be annexed to the city of Chicago, and within such territory so annexed, or any part thereof, the issuing of dram-shop licenses was prohibited or regulated by ordinance of the

city, village or incorporated town of which such territory was, before such annexation, a part, then, in such case, no license shall be issued by the mayor to keep a dram-shop within any portion of the territory so annexed wherein the issuing of dram-shop licenses was prohibited before such annexation by the corporate authorities of the municipality of which it was formerly a part, or, if within any such territory so annexed, licenses to keep dram-shops were prohibited, unless a petition therefor was filed, signed by a majority of the legal voters residing within one-half mile of the proposed location, then, in such case, the mayor shall not issue a license to keep a dram-shop within such territory, unless a petition shall be filed with him, signed by a majority of the legal voters residing within one-half mile of the location of the proposed dram-shop."

The defendant therefore alleges that, by reason of the premises, he is deprived of all authority to issue to the relator or any one else a license to keep a dram-shop upon the premises described in the petition or elsewhere within said prohibited districts, and prays judgment that the petition be dismissed at the costs of the relator.

A general demurrer to said answer being overruled, the relator filed his replication, admitting the material allegations of the answer, and admitting, among other things, that, at the time of said annexation, such parts of said ordinance of the village of Hyde Park as the president and board of trustees of said village might lawfully pass, were in full force, but alleging that section 21 of said ordinance creating said prohibited districts was *ultra vires* and void. Said replication further alleges, in substance, that at the time of the passage of said ordinance, there were large tracts of unimproved real estate, partly known as "acre" property and partly subdivided, included in said prohibited districts, none of which was contiguous to or near any church, seminary, school-house, hospital, cemetery or other public or private institution, and differing

in no respect whatever as to any public interest to be affected
by the sale of intoxicating liquors therein from other places in
said village where licenses to sell intoxicating liquors were per-
mitted, and that the premises known as 5626, Lake avenue,
were in all respects so situated that no public good could be
subserved or public interest protected by excepting it from the
places where dram-shops might be kept; that the president
and board of trustees of said village, knowing such to be the
facts, arbitrarily and without right or authority for so doing,
in violation of their duty as public officers, and as a matter of
favoritism and to create a monopoly in the keeping of dram-
shops and the sale of intoxicating liquors, and not to subserve
any public interest, unjustly, arbitrarily and unlawfully at-
tempted, by said section 21, to deprive the relator and divers
other good citizens and tax-payers of said village within the
territory of the district, including the premises in question, of
the use and enjoyment of their property in said village in the
way accorded to others under precisely the same circumstances
and conditions.

A demurrer to said replication was sustained, and judgment
was thereupon rendered denying a writ of mandamus and dis-
missing the petition at the costs of the relator. From that
judgment the relator has appealed to this court.

The replication seeks to call in question the validity of that
portion of the ordinance of Hyde Park creating prohibited dis-
tricts on three grounds; 1, that the president and board of
trustees of said village, in creating said districts, were actuated
by improper motives; 2, that the ordinance in that respect is
unreasonable and therefore void; and, 3, that said president
and board of trustees, in providing for issuing licenses to keep
dram-shops in portions of the territory embraced within the
village, exhausted their power in that behalf, and consequently
that the further provision creating prohibited districts is *ultra
vires.*

As to the first of these objections all we need say is, that the judicial department of the government will not institute any inquiry into the motives of the legislative department in the enactment of laws. This rule, which, as applied to the acts of the·State Legislature, is well settled, is applicable also to ordinances and other legislative acts of municipal corporations, with perhaps the qualification that municipal ordinances may be impeached for fraud at the instance of persons injured thereby. . *Meyer* v. *Village of Teutopolis,* 131 Ill. 552; 1 Dillon on Municipal Corporations, (4th Ed.) sec. 311. No attempt is made by the replication to make out a case of fraudulent conduct on the part of the president and board of trustees of the village of Hyde Park within the meaning of said rule, and those portions of the replication therefore which seek to call in question the motives of the village authorities in passing the ordinance are immaterial.

Nor, so far as appears from the replication, is there anything unreasonable in the ordinance. It is undoubtedly true that municipal ordinances, to be valid, must be reasonable, or to state the rule more accurately, must not be unreasonable. *City of Lake View* v. *Tate,* 130 Ill. 247. The presumption, however, is in favor of their validity, and it is therefore incumbent upon any one who seeks to have them set aside as unreasonable, to point out or show affirmatively wherein such unreasonableness consists. This we think the relator has not succeeded in doing. Thus, we are unable to see·how the fact alleged in the replication that the prohibited districts created by the ordinance embrace large tracts of unoccupied or partially occupied lands is of any materiality as bearing upon that subject, unless we admit, which we certainly do not, that dram-shops constitute an agency specially and peculiarly appropriate and necessary in stimulating and bringing about the improvement and occupancy of vacant areas within the municipal boundaries.

Again, the proximity of premises to a church, seminary, school-house, hospital, cemetery or other public or private institution may undoubtedly be a good reason for including such premises in a district from which dram-shops are excluded, but it does not follow, *e converso*, that the remoteness of premises from such institutions constitutes a ground for declaring it unreasonable, unjust or oppressive to refuse to license the keeping of dram-shops thereon. Many reasons other than the proximity of religious, educational or eleemosynary institutions may exist which render it desirable and reasonable that a particular neighborhood be kept free from the influences of dram-shops, and until it is shown that no such reason exists, it can not be said that the inclusion of such neighborhood in a prohibited district is unreasonable.

Nor is it important, so far as this question is concerned, that other premises similarly situated, and within a short distance of those upon which the relator desires to keep a dram-shop, are not included within the prohibited districts. Such state of facts will almost necessarily result from any attempt to establish partial prohibition within the limits of any particular municipal corporation. If prohibited districts are created at all, their boundaries must be established somewhere, and it may well be that the situation of premises on one side of the line may not differ essentially from that of those on the other. To a great extent the precise location of the boundary lines must be left to the arbitrary discretion of the municipal authorities. The fact that premises are omitted from the districts which might just as wisely have been included and thus brought within the same protection, in no way militates against the reasonableness of the prohibition so far as it goes.

Nor is there anything in the claim that the maintenance of prohibited districts tends to create a monopoly in the business of keeping dram-shops. It makes no discrimination whatever between persons, but all are equally at liberty to apply for and obtain licenses to carry on that business in those portions of

the municipality where the business itself is lawful.    The discrimination is only between different portions of the municipal territory, a discrimination which of course is necessarily inseparable from every attempt at partial prohibition, and which has no tendency to create what in any legal sense may be termed a monopoly.

But the more important question which the relator seeks to raise by his replication is, whether the president and board of trustees of the Village of Hyde Park had power to provide by ordinance for granting licenses to keep dram-shops in a part of the territory of the village, and at the same time prohibit the keeping of dram-shops in the residue of said territory. By subdivision 46 of section 1, article 5, of the general statute providing for the incorporation of cities and villages, it is provided that the president and board of trustees of villages shall have power, among other things, "to license, regulate and prohibit the selling or giving away of any intoxicating, malt, vinous, mixed or fermented, liquor."    That under this provision the authorities of the village had power to prohibit the sale of intoxicating liquors altogether is not and can not be questioned.    But the relator contends that word "and" should be read "or," and that said statute should be interpreted as only giving to said authorities power "to license, regulate *or* prohibit" the selling, etc., and that the president and board of trustees of the village of Hyde Park having elected to license, though only as to a part of the municipal territory, their power in that behalf was exhausted, and that their attempt at the same time to exercise the alternative power of prohibition as to the residue of said territory was *ultra vires* and void.

If there existed in the nature of things any necessary incompatibility between the power to license and the power to prohibit, so that their concurrent exercise, though in relation to different parts of the municipal territory, would naturally or necessarily lead to consequences which would be unjust, oppressive or absurd in their nature, there might be force in

the relator's contention. A strong presumption would then arise of a legislative intent to confer such incongruous powers only in the alternative, and the exercise of one might well be held to exclude the right to exercise the other. But there is no such incompatibility between the two. The policy of granting licenses to keep dram-shops in a portion of the municipal territory involves no necessary conflict with the policy of enforcing prohibition, or, in other words, of declining to grant licenses to keep dram-shops in the residue of such territory. The legal rights of no citizen are thereby invaded or abridged. No greater incongruity, oppression or wrong exists in such case than where these two modes of dealing with the liquor traffic are adopted in the territory of two adjoining municipalities, and no one will doubt the power of one municipality to enforce prohibition, although an adjoining municipality may have adopted the policy of granting licenses. We see no reason therefore why the statute in question should receive a forced construction, or should be held to mean anything different from what the language employed fairly imports. That language, according to its natural and ordinary signification, confers upon municipal corporations the power to license, regulate *and* prohibit the sale of intoxicating liquors, those powers being given, not in the alternative, but cumulatively, and to be exercised concurrently whenever the municipal authorities, in their discretion, see fit to so exercise them.

It should be observed that the statute in relation to dram-shops *prohibits* the sale of intoxicating liquors except so far as such sales are permitted by licenses granted by the proper municipal authorities, and that the duty to grant licenses, so far as the same is imposed by said statute, or by the statute in relation to the incorporation of cities and villages, is not made mandatory, but is left wholly to the discretion of said authorities. The second section of the Dram-Shop Act provides that whoever, not having a license to keep a dram-shop, shall, by himself or another, sell any intoxicating liquor in less

27—138 ILL.

quantity than one gallon, etc., shall be fined not less than $20 nor more than $100, or imprisoned in the county jail not less than ten nor more than thirty days, or both in the discretion. of the court. Section 3 authorizes county boards, (in territory not within, or within two miles of, incorporated cities, towns· or villages whose corporate authorities have power to license,. regulate, restrain or prohibit the sale of intoxicating liquors), to grant licenses to keep as many dram-shops in their counties as they may think the public good requires. The General Incorporation Law, from which as we have seen cities, towns and villages derive their power to deal with the same subject, confers the power to license, regulate and prohibit the sale of such liquors without qualification or restriction, thus leaving the whole subject to the absolute and unrestricted discretion of such municipal authorities.

While it is true that anterior to any statute on the subject the right to engage in the business of selling intoxicating liquors was a right recognized and protected by the rules of the common law, and stood substantially upon the same footing with other commercial pursuits, the rules of the common law in that respect have long since been abrogated by statute, and are. no longer in force. The Dram-Shop Act, which so far as this matter is concerned only took the place of similar legislation which had been long on our statute books, declares the business of selling intoxicating liquors in quantities less than one gallon to be criminal, except so far as it is expressly authorized and made lawful by license. The tendency of the liquor traffic is so completely shown by all human experience, that from an early day said traffic has been subjected in this State to the surveillance and control of the police power, and we presume such has been the case in most if not all civilized communities. The right therefore to engage in this business and to be protected by law in its prosecution can no longer be claimed as a. common law right, but is a right which can be exercised only in the manner and upon the terms which the statute prescribes..

The refusal to license deprives no man of any personal or property right, but merely deprives him of a privilege which · it is in the discretion of the municipal authorities to grant or withhold.    It also follows that to adopt the policy of prohibition requires no affirmative act on the part of the authorities authorized to provide for granting licenses.    Mere non-action on their part of itself results in prohibition.

Subdivision 96 of section 1, article 5, of the general law in relation to the incorporation of cities and villages gives power to the city councils of cities and the president and board of trustees of villages to pass all ordinances, rules and regulations proper or necessary to carry into effect the various powers granted by said section, and it is accordingly held that the power to license, regulate and prohibit the sale of intoxicating liquors must be exercised by a city or village by means of an ordinance on that subject passed by the proper municipal authorities.    The mere grant of this power does not, of itself, authorize the corporate authorities to issue licenses.    The power is dormant until called into exercise by appropriate municipal legislation.    *People* v. *Crotty*, 93 Ill. 180.

By passing a general ordinance on the subject the municipal authorities may determine when, to whom and under what circumstances licenses may be granted, and if such ordinance is not unreasonable, the power of the executive officers of the municipality to issue licenses will thereafter be controlled and measured by its terms.    If no discretion is reserved in relation to the number or location of the dram-shops to be licensed, then none can be exercised, and the duty becomes mandatory upon the executive officers to issue licenses to all applicants. who comply with the prescribed terms.    If, on the other hand, a discretion is reserved as to the number or location of the dram-shops to be licensed, such discretion may be exercised' by the officers charged with the duty of issuing the licenses, and if the ordinance restricts the location of dram-shops to certain portions of the municipal territory, said officers have

no power to issue licenses except in obedience to said restrictions.

The ordinance of the city of Chicago set out in the relator's petition provides, in substance, that the mayor of the city shall grant licenses to all persons applying therefor, upon their furnishing sufficient evidence that they are persons of good character, and offering to give the required bonds and to pay the prescribed license fee. It may be admitted that where such an ordinance is in force the mayor has no discretion to refuse a license to any applicant who is able to comply with the terms of the ordinance. In this respect however the ordinance of the village of Hyde Park set out in the defendant's answer is essentially different. In the first place that ordinance gave no power to issue licenses except in certain portions of the territory of the village, and prohibited their issue in the other portions of said territory, and, secondly, it was not mandatory in respect to issuing licenses outside of the prohibited districts, but merely authorized the village authorities to grant licenses to keep as many dram-shops in those portions of the village as they might think the public good required. It is clear that if this proceeding had been brought against the president and board of trustees of the village of Hyde Park prior to the annexation of said village to the city of Chicago, the relator, to show himself entitled to his writ, would have been obliged to prove, first, that the place where he proposed to keep his dram-shop was in that portion of the village territory in which the village authorities had power, under the ordinance, to issue a license, and, second, that there were not already as many dram-shops in said territory as, in the opinion of said authorities, were required by the public good. The first of these facts of course could not have been proved as it was not true, and there is no evidence tending to show that in the opinion of the village authorities before the annexation, or in the opinion of the mayor of the city of Chicago to whom their functions in this respect were transferred by the annexation, there were not

already in the annexed territory as many dram-shops as the public good required. There can be no doubt that said reservation by the ordinance of a discretion as to the number of licenses to be granted was valid, as it was clearly a reasonable exercise of the power over the subject given to the village board by the statute, and the same thing appears inferentially from the fact that precisely the same discretion is given by the Dram-Shop Act to county boards in respect to the territory under their jurisdiction.

We would not be understood as holding that a board of trustees may, by resolution merely, license one, and refuse to license another having precisely the same qualifications and local surroundings, our view being, that an ordinance must, in advance of the issuing of any license, prescribe the terms and conditions upon which licenses shall be granted, so that all in like situation, with like surroundings and having like qualifications, shall have equal opportunity to avail themselves of its privileges, and that it is not admissible for a city council or board of trustees to retain power to license one and refuse to license another, through mere caprice or favoritism.

The question then arises whether, upon the annexation of Hyde Park to the city of Chicago, the territory thus annexed became subject to the existing ordinances of the city of Chicago, or remained subject to the ordinance of Hyde Park then in force. It may be admitted that, in the absence of any countervailing legislation, the ordinances of the city, upon the annexation of adjacent territory, *eo instanti*, of their own vigor, extended to and became operative over the annexed territory. But it appears from the answer that two days before the annexation took place, and doubtless in contemplation of that event, the city council of the city of Chicago passed an ordinance restraining the effect of existing ordinances in relation to granting licenses to keep dram-shops, so as to provide that, in case of the annexation to the city of any territory in any part of which the issuing of dram-shop licenses was prohibited

or regulated by ordinance, no license should be issued by the mayor to keep a dram-shop within any portion of the annexed territory where the issuing of licenses was prohibited, except upon the petition of a majority of the legal voters residing within a half mile of the location of the proposed dram-shop. To this extent the existing ordinance of the city was modified, and when by force of the annexation proceedings new territory was brought into the city, the city ordinance became applicable thereto, if at all, only in its amended form. In that form the power to issue licenses to keep dram-shops within the prohibited districts was taken from the mayor unless the application for such license was supported by the petition of the majority of the legal voters residing within a radius of one-half mile from the proposed dram-shop. It is not pretended that any such petition was ever presented to the mayor, and it follows that under the city ordinance as it stood at the time of the annexation, and as it now stands, the mayor has no power to grant the relator the license applied for.

But by section 18 of the Annexation Act it was provided that, in case a part or the whole of an incorporated town or village should be annexed to the city, and prior to such annexation, an ordinance should be in force prohibiting the issuing of licenses to keep dram-shops within the territory annexed or any part thereof, or providing that such licenses should not be issued except upon petition of a majority of the voters residing within a certain distance of the proposed dram-shops, then such ordinance should continue in full force and effect, notwithstanding the annexation, until the question of its repeal should be submitted to the vote of the voters of the territory over which the ordinance extended, and a majority of the votes of such voters should be in favor of such repeal. And it was expressly declared to be the intention of said section to continue in full force and effect all ordinances of any municipality the whole or part of which should be annexed to the city, whereby the licensing of dram-shops was prohibited or

·regulated in the annexed territory, until the voters of the ter-
.ritory affected by the ordinance should consent to its repeal.

We see no possible ground for doubting the validity of this
·statute or its applicability to the ordinance of the village of
Hyde Park in force at the time of the annexation creating pro-
hibited districts. By it that ordinance was continued in force
notwithstanding the annexation, and was placed beyond repeal
by the city council of the city of Chicago except by consent of
the voters of said districts. Said ordinance thus remaining
in force, the mayor of Chicago had and could have no power
to grant a license to keep a dram-shop at the place designated
by the relator in his petition, that being within one of said·
prohibited districts.

Under no view of the case is the relator entitled to his man-
·damus, and the judgment of the Circuit Court refusing to grant·
him said writ and dismissing his petition was clearly right and:
must be affirmed.

*Judgment affirmed.*