The People of the State of Illinois, ex rel. James P. Kearns, Appellant, v. Fred A. Busse, Mayor, Appellee.

### Gen. No. 15,146.

1. DRAM-SHOPS—*when consent of voters condition precedent to license.* If an ordinance requires that a petition signed by certain voters shall be a condition precedent to the granting of a license, the fact that the application for a license is in the nature of an application for the renewal or extension of a previous license is immaterial. The petition is none the less essential.

2. ORDINANCES—*when contemporaneous construction does not affect.* Contemporaneous construction by municipal officers cannot be resorted to where such ordinance is plain and free from ambiguity. A construction or interpretation of the ordinance involved contrary to the principles announced in the adjudicated decisions, by administrative officers, being wrong, will not be held to be right because long persisted in.

. Mandamus. Appeal from the Circuit Court of Cook county; the Hon GEORGE A. CARPENTER, Judge, presiding. Heard in court at the October term, 1908. Affirmed. Opinion filed June 2, 1910. *Certiorari* denied by Supreme Court (making opinion final).

JOHN F. GAVIN, for appellant.

EDWARD J. BRUNDAGE and WILLIAM K. OTIS, for appellee.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

The relator filed his petition praying for the writ of *mandamus* commanding the respondent, the Mayor of

Chicago, to issue to relator a license to operate a saloon for the sale of intoxicating liquors at 2499 West Lake street in the city of Chicago. To this petition respondent filed a general demurrer. The learned trial judge, after hearing arguments of counsel for the respective parties, sustained the demurrer and relator electing to abide by his petition, it was dismissed and a judgment rendered against him for costs. From this judgment relator prosecutes this appeal.

It appears from the averments of the petition that relator had conducted a saloon in the town of Cicero since the year 1888, and that since 1899 his saloon was located at 2499 West Lake street in the town of Cicero; that in 1899 the town of Cicero was annexed to the city of Chicago, since which time it has formed a portion of that municipality; that in 1874 the town of Cicero passed an ordinance regulating the licensing of saloons for the sale of malt, vinous, spirituous, and other intoxicating liquors; that the section of such ordinance involved in this contest reads as follows:

"No application for a license to sell or give away fermented, malt, vinous or intoxicating liquor shall be granted unless the same shall be accompanied by a petition praying that a license to sell liquors may be granted to the applicant, stating the exact locality where the applicant proposes to sell liquor, signed by a majority of the legal voters residing within one-half of a mile of the proposed place where the liquors are to be sold."

This ordinance it is admitted has been in force since its passage and was in force at the time relator petitioned for the license sought to be procured by force of this *mandamus* proceeding. It also appears that after annexation the yearly license fee was increased from $500 to $1,000. Relator makes the following averment in his petition: "Petitioner alleges that he is entitled under the law to a renewal of his license for the year commencing May 1, 1908, by the payment of the license fee provided by the ordinance of the city

of Chicago without filing a petition signed by a majority of the legal voters residing within one-half mile of his place of business and upon filing bonds required by law.'' Relator complied with all the provisions of the ordinance, saving only that he did not file the petition signed by a majority of the legal voters residing within the territory as required by the ordinance.

While other questions are argued, the only one calling for our determination is the necessity or not of relator's filing the petition signed by the voters provided by the ordinance. The relator having previously filed such petition when former licenses were procured, the question arises whether on an application for a license in the nature of a renewal, that part of the ordinance must be again complied with as a condition precedent to the granting of a new license.

The selling of liquor is a lawful business in Chicago when, and only when, the seller is licensed to conduct such business. Without such license the business is unlawful. The operation of a saloon is controlled in the city of Chicago by certain ordinances enacted in virtue of the exercise of the police power delegated to the municipality by the State. The right rests in the city either to suppress or regulate the traffic in intoxicating liquors. Such is the effect of the decision in The People etc. v. Cregier, Mayor, etc., 138 Ill. 401, where the court say, in speaking of the saloon business: ''The right therefore to engage in this business and to be protected by law in its prosecution can no longer be claimed as a common law right, but is a right which can be exercised only in the manner and in the terms which the statute prescribes. The refusal to license deprives no man of any personal or property right, but merely deprives him of a privilege which it is in the discretion of the municipal authorities to grant or withhold. It also follows that to adopt the policy of prohibition requires no affirmative act on the part of the authorities authorized to provide for granting li-

censes.    Mere non-action on their part of itself results in prohibition." Wall v. Allen, 244 ib. 456.

The power of the municipality over the liquor traffic is complete, and its action in its regulation conclusive. It is clear from the Cregier case *supra* that failure on the part of the municipality to enact any licensing ordinance would result in establishing prohibition within the municipal limits.    A repeal of existing ordinances without the enacting of any others on that subject would bring about a similar result.    Nevertheless where licensing ordinances exist and an applicant for a license has complied with all their essential provisions, such applicant would not only be entitled to demand a license, but on failure to obtain the same from the properly constituted authorities to compel the issuance of such license by appropriate *mandamus* proceedings.    The filing of the petition containing the consent of a majority of the voters residing within the half mile limit provided for by the ordinance is a condition which relator must comply with before he is in a position to demand a license.    This is an essential condition which cannot be dispensed with.    The meaning of this provision is plain and applies to every application for a license, whether sought for new premises or for a place formerly licensed as a saloon.    The reason for the enforcement of such provision is not hard to discern.    The voters resident within such limits may, between the time of granting a license and an application for a new one, have materially changed, so that a majority of the voters within the territorial limit may be opposed to the granting of a license and unwilling to yield their consent that the saloon be further continued in business.    As sometimes happens, the manner of conducting such saloon during the preceding year may have become obnoxious to a majority of such voters, and they may be desirous of having it suppressed.    The ordinance in question clothes them with the power to prevent its further operation, and

they have the privilege of availing of the right thus conferred.

It is urged with much confidence by counsel for appellant that the contemporaneous construction of this ordinance by administration officers is controlling and binding upon the courts.   Such construction put upon the ordinance limited the necessity of obtaining the voters' consent to the first application for a license, and did not extend to any subsequent application for a license on premises already established under a license where such consents had been primarily obtained. Such contention, we think, is fallacious and contrary to legal precedent.   Contemporaneous construction by such officers cannot be resorted to where such ordinance is plain and free from ambiguity.   As said in Jarrot v. Jarrot, 2 Gilm. 1, "If it could be said that the language of the constitution was clear and free from any doubt, a contrary legislative and administrative construction would have no weight."   And as again said in Burke v. Snively, 208 Ill. 328, "It is a primary rule that the meaning of a constitutional provision is to be ascertained from the language employed therein, and that it is only when ambiguity is found and the meaning is doubtful that the extrinsic aid of practical construction given by other departments of the State is to be resorted to."   In U. S. v. Graham, 110 U. S. 219, the Federal Supreme Court said of a law which it considered lacking ambiguity: "Such being the case, it matters not what the practice of the department may have been or how long it continued, for it can only be resorted to in aid of interpretation, and it is not allowable to interpret what has no need of interpretation. If there were ambiguity or doubt, then such practice began so early and continued so long would be in the highest degree persuasive if not absolutely controlling in its effects."   A construction against the plain meaning of a law as expressed by its terms is never indulged, not even in aid of justice or right or to avoid an absurdity.

The court say in State Board of Health v. Ross, 191 Ill. 87, "When the language of a statute is clear and plain there is no reason for construction, and we are not at liberty to speculate upon what was the intention of the legislature." Martin v. Swift, 120 ib. 488; Ottawa Gas Light Co. v. Downey, 127 ib. 201; C. M. & St. Paul R. R. Co. v. Dumser, 109 ib. 402; Springfield v. Edwards, 84 ib. 626.

The following language of the court in Beardstown v. Virginia, 76 Ill. 34, is pertinent and controlling in the case under consideration: "It is not allowable to interpret what has no need of interpretation, and when the words have a definite and precise meaning, to go elsewhere in search of conjecture in order to restrict or extend the meaning. Statutes and contracts should be read and understood according to the natural and most obvious import of the language, without resorting to subtle or forced construction for the purpose of either limiting or extending their operation."

A construction or interpretation of the ordinance involved contrary to the principles announced in the decisions cited, by administrative officers, being wrong, cannot be held to be right because long persisted in. The erroneous conduct of such officers is of no controlling force and cannot be availed of to influence our decision or persuade us to depart from the settled canons of construction.

No case cited in support of counsel's theory of the binding force of the construction of the ordinance in question by the officers administering it can be said to hold any doctrine contrary to that announced in the cases referred to and quoted from in this opinion. The ultimate result reached in each case is reconcilable with the doctrine so uniformly pronounced and adhered to by our Supreme Court whenever official interpretation of the constitution or statutes has been violative of the plain meaning of the words used to express the intent and where the language in which such intention

is couched is free from ambiguity.   And ordinances of a city are municipal statutes.

The relator having failed to comply with that provision of the ordinance above cited was not entitled to receive a license for the continued operation of his saloon.   The petition not stating a case entitling relator to a license to further operate his saloon, the demurrer thereto was properly sustained, and the judgment of the Circuit Court dismissing the petition at the cost of relator is affirmed.

*Affirmed.*