The People of the State of Illinois, ex rel. William H. Stead, Attorney General, Appellant, v. City of Chicago, Appellee.

### Gen. No. 19,532.

1. QUO WARRANTO, § 17*—*when lies to test right of city to issue dramshop licenses.* Quo warranto may be properly brought against a city to test its right to issue licenses for the sale of intoxicating

*See Illinois Notes Digest, Vols XI to XV, and Cumulative Quarterly, same topic and section number.

liquors in annexed territory where such territory at the time of annexation had an ordinance in force providing against the issuance of dramshop licenses except on petition of voters residing in such territory. The right to proceed by quo warranto against the licensees is not an exclusive remedy.

2. INTOXICATING LIQUORS, § 18*—*effect of statutory grant of power to city to license.* The statutory grant of power to a city to license the sale of intoxicating liquors does not take effect as a "power conferred" until after an ordinance has been adopted authorizing the issuance of such licenses.

3. INTOXICATING LIQUORS, § 19*—*binding effect of ordinance of annexed territory.* Section 18 of the Annexation Act, J. & A. ¶ 1655, providing that an ordinance of the annexed territory in force at the time of annexation relating to the licensing of dramshops in such territory shall remain in force until repealed by the voters in such territory, gives to such ordinance all the force and effect of an express statutory limitation.

Appeal from the Circuit Court of Cook county; the Hon. JOHN P. McGOORTY, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1913. Reversed and remanded with directions. Opinion filed May 21, 1914. Rehearing denied June 3, 1914.

WILLIAM H. STEAD, for appellant; WILLIAM F. MULVIHILL and O'DONNELL & O'DONNELL, of counsel.

WILLIAM H. SEXTON, for appellee; BRYAN Y. CRAIG, of counsel.

MR. PRESIDING JUSTICE FITCH delivered the opinion of the court.

An information in the nature of a quo warranto was filed in the Circuit Court by the Attorney General to test the right of the City of Chicago to issue licenses for the sale of intoxicating liquors within territory which formerly constituted a part of the town of Cicero, without requiring applicants to comply with an ordinance of that town which, it is alleged, was in force at the time of annexation and is still in force. The Circuit Court sustained a demurrer to the information and dismissed the proceeding upon the ground (as stated by counsel in their briefs) that the information does not charge a usurpation of power

*See Illinois Notes Digest, Vols XI to XV, and Cumulative Quarterly, same topic and section number.

by the City, but merely the unwarrantable exercise of a granted power.

Section 1 of chapter 112 of the Revised Statutes (J. & A. ¶ 8687) provides "that in case  *  *  *  any corporation  *  *  *  exercises powers not conferred by law," the Attorney General may present a petition to any court of record of competent jurisdiction for leave to file an information in the nature of a quo warranto in the name of the People of the State of Illinois, and if such court shall be satisfied that there is probable grounds for the proceeding, the court may grant the petition and order the information filed. Other sections of the same chapter provide that each defendant shall be required to demur or plead to the information within such time as may be allowed, and that in case a defendant corporation is found guilty as charged in the information, the court may impose a fine not exceeding $25,000, or enter a judgment of ouster.

The theory of the information is that the City of Chicago has been and is "exercising powers not conferred by law." The information states that in 1889, certain territory therein described, which was then a part of the incorporated town of Cicero, was annexed to the City of Chicago in the manner provided by the Annexation Act of that year; that at the time of such annexation, and at the present time, there was and is in force an ordinance of the town of Cicero, which provides that "no application for a license to sell or give away fermented, malt, vinous or intoxicating liquors shall be granted unless the same shall be accompanied with a petition praying that a license to sell liquor be issued to the applicant, and stating the exact locality where the applicant proposes to sell liquor, and signed by a majority of the legal voters residing within one-half mile of the proposed place where liquors are to be sold;" that for more than six months "last past," the City of Chicago has unlawfully issued and granted licenses to sell liquor in said territory to applicants who did not file with their several applica-

tions the petitions required by said ordinance, and still continues so to do, in violation of section 18 of the Annexation Act of 1889. (J. & A. ¶ 1655.) The information concludes with a prayer that the City be required to answer to the People of the State of Illinois by what warrant it claims to exercise the power of granting such licenses without petitions therefor, signed by the requisite number of legal voters, as required by said ordinance.

In *People ex rel. Longress v. Board of Education of Quincy,* 101 Ill. 308, the board of education of the city of Quincy had adopted a rule which provided that no pupil of African descent shall be permitted to attend any school except a certain one set apart for that purpose, and the Attorney General filed an information under the statute above quoted charging that the board were maintaining and enforcing said rule "without authority of law." The Supreme Court held that the proceeding was properly brought under the statute in question, and said as to this point (p. 312): "The board of education is a corporation created by law, clothed with the exercise of certain powers in relation to the public schools of Quincy. Now, if the board, in the discharge of its duties as a corporation, exercises powers not conferred by law, it is apparent that it will fall within the obvious meaning of the statute, unless the plain reading of the statute is to be disregarded. The very gist of the complaint here is, that the board of education, a corporation, is exercising powers not conferred by law, unless it had the right to adopt and enforce the rules set out in the information. We are therefore clearly of opinion that, under the statute, the Attorney General had the right to file the information." This case was cited and its principle indorsed in *Commissioners v. Griffin,* 134 Ill. 330, 343.

In *People ex rel. Cooney v. City of Peoria,* 166 Ill. 517, it was held that quo warranto may be properly brought against a municipal corporation to test the question whether such a corporation has exceeded its corporate powers and is acting illegally, if the legal

existence of the municipality be not questioned and the contest involves the investigation of facts not appearing of record. This rule is in harmony with the prevailing current of authority elsewhere. 17 Encyc. of Pl. & Pr. 396 and cases cited; *City of Uniontown v. State ex rel. Glass,* 145 Ala. 471, 473; *State v. City of Topeka,* 30 Kan. 653; *State ex rel. Walker v. McLean County,* 11 N. D. 356, 360.

The gist of the complaint in this case being that the City of Chicago is "exercising powers not conferred by law," in granting licenses within the annexed territory contrary to the express prohibition contained in the Cicero ordinance (which, as the demurrer admits, was at the time of annexation, and still is, in full force and effect as to such territory), it seems clear from the foregoing authorities that this proceeding is properly brought under the quo warranto statute, if the granting of such licenses constitutes an exercise of powers not conferred by law.

It is contended by counsel for the City that in issuing licenses in the manner and under the circumstances set forth in the information, the City is not exercising a power which it does not possess, but is merely exercising, in an irregular or improper manner, a power "conferred" upon it by statute; and it is urged that the only remedy in such cases is against the licensees and not against the City. By the forty-sixth paragraph of section 1 of article V of the act for the incorporation of cities and villages (J. & A. ¶ 1334), the City is given the general power to "license, regulate and prohibit" the sale of liquors within its corporate limits. By section 16 of the Annexation Act of 1889 (J. & A. ¶ 1655), it was provided that if at the time of annexation there was in force in the territory annexed an ordinance providing that dramshop licenses shall not be issued except upon the petition of a majority of the voters residing within a certain distance of such proposed dramshop, then such ordinance shall continue in full force and effect, notwithstanding

such annexation, until the voters in the territory annexed shall have voted to repeal the same. In *People ex rel. Morrison v. Cregier,* 138 Ill. 401, the effect of both these statutes was considered. That was a mandamus proceeding brought to compel the mayor of Chicago to issue a license to keep a dramshop in certain annexed territory, as to which an ordinance of the character above described was in force at the time of annexation. The court in that case held that the right to engage in the business of selling intoxicating liquors in quantities less than one gallon "can no longer be claimed as a common law right, but is a right which can be exercised only in the manner and upon the terms which the statute prescribes;" that while the general power is given to cities, towns and villages by statute to license, regulate and prohibit the sale of intoxicating liquors, yet this mere statutory grant of power does not, of itself, authorize the corporate authorities to issue licenses; that this power "is dormant until called into exercise by appropriate municipal legislation;" that "mere non-action" on the part of a municipality "of itself results in prohibition;" that it is lawful for a city or incorporated town to provide by ordinance that in specified districts no licenses shall be issued except upon the petition of the legal voters residing therein; that so long as an ordinance of that character remains in force as to any such specified district the municipal authorities *have no power* to issue licenses therein contrary to the terms of such ordinance; and that by section 18 of the Annexation Act, if such an ordinance was in force at the time of annexation, it was continued in force notwithstanding the annexation, and "placed beyond repeal by the city council of the City of Chicago except by consent of the voters of said districts." This case was followed and its application extended in the later case of *People ex rel. Krause v. Harrison,* 191 Ill. 257.

It is an elementary principle of the law of municipal corporations that such corporations possess only such

powers as are granted to them by the legislature. If, as was held in the cases cited, the mere statutory grant of power to all cities, towns and villages in the State to "license, regulate and prohibit" the sale of liquors within the corporate limits does not, of itself, authorize the corporate authorities of any particular city, town or village to issue licenses for the sale of liquors, and such general grant of power can only become effective in any particular city, town or village after the passage of an ordinance authorizing the issuance of such licenses, then it follows that until such an ordinance has been adopted, the city, town or village is wholly without power to issue licenses to any one. *People ex rel. Besse v. Village of Crotty,* 93 Ill. 180, 188; *People ex rel. Conlon v. Mount,* 186 Ill. 560, 570. Until such an ordinance has been passed, the general grant of power is only a conditional or contingent grant, and it is therefore manifest that such granted power cannot and does not take effect as a "power conferred" until the prescribed condition has been performed. When, therefore, the town of Cicero adopted an ordinance specifically providing that no license shall be issued except upon the .petition of a specified number of legal voters, it follows that in any case arising before annexation where no such petition was presented, the town of Cicero was as wholly without power to issue the license as it would have been if no ordinance on the subject had ever been adopted by it. Hence, it would seem to be clear that under the circumstances stated in the information, and under section 18 of the Annexation Act, the granting of licenses by the City of Chicago within the annexed territory without the petition of voters required by the ordinance of the town of Cicero was an exercise of power which the City does not possess and has no lawful right to exercise, assuming, of course, as we must on this appeal, that said Cicero ordinance has never been repealed.

The construction placed by the Supreme Court upon other paragraphs of the same section of the Cities and Villages Act, which provides for other kinds of licenses, tends to support the views we have thus expressed. The twenty-fourth paragraph of that section gives to the city council the general power "to permit, regulate or prohibit the locating, constructing or laying a track of any horse railroad in any street, alley or public place." The ninetieth paragraph provides that the city council shall have no power to grant the right to lay down railroad tracks in any street except upon the petition of the owners of the land representing more than one-half of the frontage of the street. This paragraph has repeatedly been construed and held to be a limitation upon the general power given by the twenty-fourth paragraph; and it is also held that the effect of such limitation is that a municipality is wholly without power to issue a license to lay railroad tracks in a public street until the required consent of property owners has been first obtained. *McCartney v. Chicago & E. R. Co.*, 112 Ill. 611; *Hunt v. Chicago Horse & Dummy Ry. Co.*, 121 Ill. 638; *Doane v. Chicago City Ry. Co.*, 160 Ill. 22; *City of Chester v. Wabash, C & W. R. Co.*, 182 Ill. 382; *McGann v. People ex rel. Coffeen*, 194 Ill. 526. In *McCartney v. Chicago & E. R. Co., supra,* it was said, p. 639: "Where this required consent has not been obtained, the city is *absolutely without power* to grant the license, and the exercise of it would be wholly without warrant, and unlawful." In *Hunt v. Chicago Horse & Dummy Ry. Co., supra,* it is said, p. 645: "The charter of the city confers upon the council the power to grant the use of the streets to horse or steam railroad companies, and paragraph 90 restricts and limits the exercise of that power to cases where there is a petition of property owners;" and on page 646, this language is explained thus: "That power lies dormant until the requisite number of owners authorize its exercise by petition. When they do so, the *limitation upon the power* of

the council no longer exists. That body is *then* prepared to deal with the railroad companies *and not before.*" In *Doane v. Chicago City Ry. Co., supra,* it was said, p. 31: "The provision of the statute embodied in paragraph 90 is a limitation upon the power of the council to grant the use of the streets to a street railway company. Unless there is a petition of those owning more than one-half of the frontage to be used, the council is *without power to grant the license.*" Similar expressions are used in each of the cases above cited, and the reasoning adopted in each of them is similar to that of the *Cregier* case, *supra.* It is true that paragraph 90 is a statutory limitation upon the power of the council, while the limitation here involved is contained only in an ordinance of the town of Cicero. But an ordinance, duly enacted, has all the force of a statute within the territory affected by it; and moreover section 18 of the Annexation Act, as construed in *People ex rel. Morrison v. Cregier, supra,* gives to the ordinance here in question all the force and effect of an express statutory limitation. It is also true that none of the railroad cases above cited is a proceeding brought under the quo warranto statute. Most of them are informations in chancery, filed by the Attorney General. But unless we are to entirely disregard the plain provisions of the statute, as well as the decision of the Supreme Court in *People v. Board of Education of Quincy, supra,* we must hold that an information filed under the quo warranto statute is an appropriate remedy, under the facts of this case.

Counsel for the City points out that the quo warranto act expressly gives the right to the Attorney General to file an information against the licensees who are operating under the licenses granted by the City, and urges with much force that such is the proper and only remedy under the quo warranto statute. That such a proceeding may be brought against the licensees is not only apparent from the language of

the act itself, but the right to bring such proceedings against the licensees has several times been affirmed by the Supreme Court. *Swarth v. People ex rel. Paxton,* 109 Ill. 621; *Martens v. People ex rel. Searle,* 186 Ill. 314; *People v. Heidelberg Garden Co.,* 233 Ill. 290. But by the same section the right is also given to proceed directly against the corporation whenever the corporation is exercising powers not conferred by law. This being true, we do not think the mere fact that each individual licensee may be required to prove his right to use the license granted to him precludes the State from challenging the right of the City to issue such licenses.

For the reasons stated, we are of the opinion that the Circuit Court erred in sustaining the demurrer and dismissing the information. The judgment will, therefore, be reversed and the cause remanded with directions to overrule the demurrer.

*Reversed and remanded with directions.*