# GEORGE W. HILL

## *v.*

## GEORGE F. HARDING *et al.*

1. ATTACHMENT—*effect of giving recognizance to pay judgment.* Where the defendant's recognizance with sureties for the payment of whatever judgment the plaintiff in attachment may recover is taken, and approved by the court, and an order is made dissolving the attachment and releasing the property attached, the character of the suit as a proceeding *in rem* is changed, and thereafter becomes a proceeding *in personam* as if commenced by summons, and the lien of the attachment ceases.

2. SAME—*plea in abatement after release of property.* After the approval of a recognizance for the payment of whatever judgment the plaintiff may recover in a suit brought by attachment, and an order dissolving the attachment and restoring the property attached, no plea in abatement traversing the grounds for the writ can be entertained, and if filed there is no error in striking the same from the files.

3. PRACTICE—*reinstating plea stricken from the files.* Ordinarily, where a pleading of any kind has been once properly stricken from the files, it is a matter of discretion whether the court will on application reinstate it, and nothing but a manifest abuse of that discretion is reviewable in an appellate court.

4. EXCEPTIONS AND BILLS OF EXCEPTIONS — *when necessary.* If the court makes an improper ruling upon a motion to strike a plea from the files, it is the duty of the party dissatisfied with the action of the court to except to its

ruling, and if he fails to do so, he must be deemed to have waived the error, and if once waived, it is a matter of pure discretion whether the court will reconsider its action.

5. Where the grounds of a motion together with the exception to the ruling have not been preserved by a proper bill of exceptions, this court can not consider the question, and all presumptions are in favor of the action of the court below.

6. BANKRUPTCY—*does not destroy bona fide liens.* Although one of the chief objects of the Bankrupt law of the United States was to place creditors of the bankrupt upon terms of perfect equality in sharing in the distribution of his estate, yet in making such distribution it was not intended to interfere with the rights of such creditors as by superior diligence have in good faith secured their claims against the bankrupt by acquiring liens upon his estate.

7. SAME—*effect on attachments.* Under the late Bankrupt act the assignment of the bankrupt's estate *ipso facto* dissolved all attachments of his property commenced within four months before the commencement of the bankruptcy proceedings, but did not affect any attachments whereof the proceedings were commenced in good faith prior to the time indicated, or dissolve the liens of the same, or prevent the creditor from prosecuting his suit to final judgment.

8. In all cases where an attachment has in good faith been sued out more than four months before the commencement of proceedings in bankruptcy, by which the attaching creditor acquires a valid lien upon the bankrupt's estate, the attaching creditor may, notwithstanding the adjudication in bankruptcy, proceed to judgment in the State court in order to perfect and render available his lien upon the attached estate, and so he may where the defendant in attachment has procured a release of the property attached by giving bond or recognizance for the payment of whatever judgment may be obtained against him.

9. SAME — *construction.* The several provisions of the Bankrupt law should be considered together in the light of the general objects and purposes of the National legislature in establishing a general system of bankruptcy, and should be so construed as to promote and effectuate the manifest objects of the act, though such construction may seem in conflict with the literal phraseology of some particular section.

APPEAL from the Appellate Court of the First District; the Hon. THEODORE D. MURPHY, presiding Justice, and Hon. GEO. W. PLEASANTS and Hon. JOSEPH M. BAILEY, Justices.

On the 16th of March, 1877, appellees sued out of the circuit court of Cook county a writ of attachment against the

estate of appellant, which was on the same day levied on certain lands as the property of appellant.

The affidavit upon which the attachment was based set forth that appellant was indebted to appellees in the sum of $8264, on account of legal services, and "that he was about fraudulently to conceal, assign, or otherwise dispose of his property or effects, so as to hinder or delay his creditors."

On the 28th of the same month appellant as principal, and certain other parties as his sureties, entered into a recognizance in open court, wherein they bound themselves to appellees in the sum of $16,528, conditioned that if appellant should pay the amount of whatever judgment might be rendered against him in said attachment suit, on the final trial thereof, within ninety days from date of judgment, the recognizance was to be void, otherwise to remain in full force and effect.

Upon entering into this recognizance an order of court was duly entered of record in the attachment proceeding dissolving the attachment and directing the property levied upon to be restored to appellant.

On the 6th of April following appellees filed a declaration in assumpsit in the usual form, to which, on the 18th of the same month, a plea of the general issue was filed and issue joined thereon. At the same time appellant also filed a plea in abatement traversing the affidavit, which on motion of appellees was stricken from the files.

On the 17th of March, 1878, appellant entered a motion to reinstate upon the files the above mentioned plea in abatement, which motion was overruled, and on the following day the cause was submitted to a jury, which resulted in a verdict and judgment in favor of appellees for the sum of $3500.

Pending the motion for a new trial appellant, on his own petition, was duly declared a bankrupt, and a certified record of his having been adjudged a bankrupt was filed in said attachment proceedings, and upon the filing thereof, and before any judgment had been entered on the verdict, appellant moved the court to stay further proceedings in said cause, to

await the determination of the court of bankruptcy on the question of his discharge as such bankrupt, which motion was overruled by the court, and final judgment was thereupon entered upon the verdict.

This judgment, upon appeal to the Appellate Court for the First District, was affirmed, and appellant now brings the record by appeal to this court for review.

Messrs. BRANDT & HOFFMAN, for the appellant.

Mr. W. H. BARNUM, for the appellees.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

A reversal of the judgment of the Appellate Court is urged upon two grounds. It is claimed, in the first place, that the circuit court erred in denying appellant's motion for a stay of proceedings in that court until the question of appellant's discharge as a bankrupt could be determined in the District Court. Secondly, it is insisted that if appellant was not entitled to a stay of proceedings, then his motion for a new trial should have been granted, and that it was error in the circuit court to refuse it.

We will consider these positions in the inverse order in which they are made. By reference to the motion for a new trial it will be perceived that the only ground upon which the motion was based was the action of the court in striking appellant's plea in abatement from the files.

The 14th section of chapter 11 of the Revised Statutes of 1874, entitled "Attachments," provides as follows:

"Any defendant in attachment desiring the return of the property attached may at any time, except in term time, at his option, instead of or in substitution for the bond required in the preceding section, give like bond and security in a sum to cover the debt and damages sworn to in behalf of the plaintiff, with all interest, damages and costs of suit, conditioned that the defendant will pay the plaintiff the amount

of the judgment and costs that may be rendered against him in that suit, on a final trial, within ninety days after such judgment shall be rendered.

"In term time a recognizance, in substance as aforesaid, may be taken in open court and entered of record, in which case the court shall approve of the security and the recognizance made to the plaintiff, and upon a forfeiture of such recognizance judgment may be rendered and execution issued as in other cases of recognizance.

"In either case the attachment shall be dissolved and the property taken restored, and all previous proceedings, either against the sheriff or against the garnishees, set aside, and the cause shall proceed as if the defendant had been seasonably served with a writ of summons."

The recognizance entered into by appellant and his sureties in this case was in strict conformity with the provisions of the section of the statute just cited, and when so taken and approved by the court, and the order dissolving the attachment was duly entered, the character of the suit as a proceeding *in rem* was thereby completely changed. The suit thereupon became a proceeding *in personam* as completely as if it had been originally commenced by an ordinary summons and no attachment had ever been sued out; and the qualified lien which appellees acquired by the levy of the attachment was forever gone. This being so, no possible good could have resulted from an inquiry as to whether the attachment was properly or improperly sued out.

Suppose the plea had been restored, and an issue formed thereon had been tried and found in favor of appellant, what judgment could the court have rendered thereon? Certainly not " that the writ of attachment be quashed," for that was no longer before the court. The attachment was already dissolved, and the writ itself was not only *functus officio*, but its previous effect and operation were completely annihilated by the entering into and approval of the recognizance and the order dissolving the attachment, and such a judgment there-

6—93 ILL.

fore would have been an idle, useless ceremony, without any effect whatever upon the writ in question. But outside of this, was appellant in a position to make this motion at the time it was interposed? The qualified lien which appellees acquired by the levy of their attachment was, by the voluntary act of appellant, completely destroyed, the attachment dissolved, and the security for their claim which the attachment lien upon the land afforded was wholly lost to appellees. Upon the dissolution of the attachment, the land upon which it had been levied being freed from the lien, appellant was at once enabled to sell or otherwise dispose of it so as to completely defeat appellees' claim, in the event his sureties on the recognizance should prove worthless. It will be observed, also, that this recognizance was entered into on the 28th day of March, 1877, and on the 17th of April following the plea in abatement was filed, and on the 26th of the following month it was stricken from the files on motion of appellees.

To the action of the court in striking this plea from the files, so far as the record shows, there were no objections made or exceptions taken on the part of appellant, and no question was made about it until the 17th day of March, 1878, nearly ten months afterwards, when for the first time appellant questioned the action of the court in striking the plea from the files by the entry of his motion to reinstate it.

In the meantime appellant became a bankrupt, and for aught the court could know appellees' witnesses to prove the truth of the affidavit for the attachment may have died, or scattered into parts unknown.

Even admitting that under some circumstances—which we do not by any means admit—a defendant in an attachment, after having entered into a recognizance like the one under consideration, can afterwards question the grounds upon which the attachment was issued, we are very clear that appellant had no right to do so, under the circumstances in this case. Ordinarily where a pleading of any kind has been once properly stricken from the files, it is a matter of discretion whether

the court will on application reinstate it, and nothing but a manifest abuse of that discretion is reviewable in an appellate court.

On the other hand, it is well settled, that if the court makes an improper ruling upon a motion to strike a plea from the files, it is the duty of the party dissatisfied with the action of the court to except to its ruling, and if he fails to do so he must be deemed to have waived the error, and if once waived it is a matter of pure discretion whether the court will reconsider its action.   2 Tidd, 788, 1st Am. ed.; *Snell* v. *Trustees of the Society of the Methodist Episcopal Church of Clinton, etc.* 58 Ill. 290; *Reed* v. *Horne,* 73 id. 598.   And where the grounds of the motion together with the exception have not been preserved, as in this case, by a proper bill of exceptions, this court can not consider the question, and all presumptions are in favor of the action of the court below.   It follows, therefore, that the circuit court committed no error in refusing to grant a new trial for the reason assigned in the motion.

The remaining question to be considered, and the one mainly relied upon by appellant for a reversal, is, was it error in the circuit court to proceed to judgment after appellant had been adjudicated a bankrupt and a properly certified record of such adjudication had been filed in the attachment cause and a formal motion for a stay of proceedings entered?   We have never had occasion to pass upon this precise question, yet it is by no means a new one to the courts of the country.   It has been passed upon both in the State and Federal courts, and different conclusions have been reached.   Its determination involves the consideration of some of the provisions of the late Bankrupt act.

Section 5106 of the Revised Statutes of the United States provides as follows: "No creditor whose debt is provable shall be allowed to prosecute to final judgment in any suit at law or equity therefor against the bankrupt, until the question of the debtor's discharge shall have been determined.   Any such suit or proceeding shall, upon the application of the

84           HILL *v.* HARDING *et al.*           [Sept. T.

Opinion of the Court.

bankrupt, be stayed to await the determination of the court in bankruptcy on the question of discharge, provided there is no unreasonable delay on the part of the bankrupt in endeavoring to obtain his discharge, and provided also, that if the amount due the creditor is in dispute, the suit, by leave of the court in bankruptcy, may proceed to judgment for the purpose of ascertaining the amount due, which amount may be proved in bankruptcy, but execution shall be stayed."

Section 5119 provides, that "a discharge in bankruptcy duly granted (with certain exceptions mentioned, not important here,) shall release the bankrupt from all debts, claims, liabilities and demands which were or might have been proved against his estate in bankruptcy."

Section 5044 provides, that "as soon as an assignee is appointed and qualified, the judge, or, where there is no opposing interest, the register, shall, by an instrument under his hand, assign and convey to the assignee all the estate, real and personal, of the bankrupt, with all his deeds, books and papers relating thereto, and such assignment shall relate back to the commencement of the proceedings in bankruptcy, and by operation of law shall vest the title to all such property and estate, both real and personal, in the assignee, although the same is then attached on mesne process as the property of the debtor, and shall dissolve any such attachment made within four months next preceding the commencement of the bankruptcy proceedings."

And section 5118 provides, that "no discharge shall release, discharge or affect any person liable for the same debt for or with the bankrupt, either as partner, joint contractor, indorser, surety or otherwise."

These provisions of the act of Congress should be considered together, in the light of the general objects and purposes of the National legislature in establishing a general bankrupt system, and should be so construed as to promote and effectuate the manifest objects of the act, although such construction may seem in conflict with the literal phraseology of some particular

section of the act.   While one of the chief objects of Congress in establishing a general bankrupt law was doubtless to place the general creditors of the bankrupt upon terms of perfect equality and secure an equal division of the bankrupt's estate among them in proportion to their respective claims, yet it can not reasonably be supposed that it was intended, in making this distribution, to at all interfere with the rights of such creditors of the bankrupt as by superior diligence had in good faith secured their claims against him, by acquiring liens upon his estate.   In pursuance of this general intent, it is expressly provided in section 5052, that " no mortgage of any vessel, or of any other goods or chattels made as security for any debt in good faith for a present consideration, and otherwise valid, and duly recorded pursuant to any statute of the United States or of any State, shall be invalidated or affected by an assignment in bankruptcy."   On the other hand, all attempts by the bankrupt or one in contemplation of bankruptcy to give one creditor a preference over another are, by section 5021, declared to be acts of bankruptcy, and fraudulent and void as against the assignee.

And by section 5046, all property conveyed by the bankrupt in fraud of his creditors is made to vest absolutely in his assignee.   And for the purpose of more effectually preventing one creditor from obtaining an undue advantage over another through the instrumentality of legal proceedings, in the distribution of the bankrupt's estate, it was expressly provided, as shown by section 5044 above cited, that the assignment of the bankrupt's estate should dissolve any attachment sued out within four months next preceding the commencement of the bankruptcy proceedings.

Here we see the law makers distinguishing attachments commenced within four months from the time of the institution of proceedings in bankruptcy, from attachments commenced before that time.   The effect of the assignment upon the class of attachments expressly mentioned is clearly and specifically declared.

The assignment *ipso facto* dissolves such attachments. With respect to attachments made more than four months next preceding the commencement of the proceedings in bankruptcy, the statute, so far as any express provision is concerned, is silent; yet, there can be as little doubt as to the intention of the law makers in the one case as in the other. When it is declared that the assignment shall dissolve all attachments made within a given period, the irresistible inference is that all attachments not made within the specified period are not dissolved by the assignment. Now, if it was not intended that the latter class of attachments should be dissolved by the assignment, it must have been intended that all persons who had, in good faith, more than four months before the commencement of the proceedings in bankruptcy, acquired attachment liens upon the bankrupt's property, should have the benefit of such liens, and it would therefore follow that any construction given to section 5106, above cited, which would deprive the attaching creditor of the benefit of such lien, can not be the true construction.

Since an attachment lien is always defeated by a failure to obtain judgment, and the discharge of the bankrupt destroys the right of action so that no judgment can be obtained after such discharge, it is manifest that to hold that this section applies to attachments sued out more than four months before the commencement of proceedings in bankruptcy would have the effect, in all cases where the bankrupt ultimately obtains his discharge, of defeating the attachment lien altogether.

It is true the words of the section are very broad, and to construe and enforce them literally would defeat an attachment lien like the one supposed. The language is: "No creditor whose debt is provable shall be allowed to prosecute to final judgment," etc.

The claim of appellees was certainly provable under the Bankrupt act, and the application to stay proceedings is conceded to have been made before judgment, hence it can not

be denied that appellees were brought within the literal terms of the section of the act in question.

But, as already observed, to construe and enforce this section according to its literal terms would, in all cases of the kind supposed, defeat that class of attachment liens which the act taken as a whole manifestly intended to protect. We concede the binding authority of the section in question upon State courts, as well as National, and in an appropriate case it should be enforced just like any other provision of law. But the right and duty to enforce the law, whether it be Federal or State, necessarily involves the right and duty to construe it.

Every court must necessarily determine what the law is before it can apply it. We therefore hold, after a very careful consideration of the various provisions of the Bankrupt act, that in all cases where an attachment has, in good faith, been sued out more than four months—as was the case here—before the commencement of the proceedings in bankruptcy, by which the attaching creditor acquires a valid lien upon the bankrupt's estate, the attaching creditor may, notwithstanding the provisions of section 5106 of the Bankrupt act and the admitted adjudication of the defendant as a bankrupt, proceed to judgment in the State court in order to perfect and render available his lien upon the attached estate. He is not in such case bound to wait till the bankrupt is discharged. To compel him to do so would be to force him to pursue a course which would result in the loss of his debt; would be to deprive him of a right which the law makers manifestly intended to protect; finally, would be to practically place all attachments on the same footing.

If the attaching creditor who commenced proceedings more than four months before the commencement of proceedings in bankruptcy is compelled to suspend all further proceedings in his attachment suit and quietly stand by till the bankrupt obtains his discharge, and thereby completely destroys his right of action, so that he can not recover a judgment at all, how much better off is he than the attaching creditor who

88 HILL *v.* HARDING *et al.* [Sept. T.

Opinion of the Court.

sued out his attachment within the four months? No better. We repeat, to give the section such a construction would be practically to place all attachments upon the same footing.

The section in question should in all cases be so construed and enforced as to protect rather than defeat vested rights, keeping in view the general objects and purposes of the Bankrupt act.

In perfect harmony with the principles here announced is the case of *Byers et al.* v. *National Bank of Vincennes,* 85 Ill. 423. That case holds that where two or more are sued in a State court, and pending such suit one of the defendants becomes a bankrupt, the plaintiff may, notwithstanding the section in question, proceed to judgment.

But it may be urged that in the present case the suit had ceased to be an attachment proceeding. That is true. But the same principle which forbids a stay of the proceedings in attachment cases applies with equal force to the case at bar. The security for the judgment which the plaintiffs were seeking to recover could only have been made available by the actual rendition of the judgment. To have stayed the proceeding until the defendant received his discharge would have been in effect to have deprived him of his security altogether —in short, a loss of his claim. The Bankrupt act was not intended to relieve third parties of just liabilities to the creditors of the bankrupt, and it should not be so construed as to give it that effect.

It follows, from the view we have taken, that the circuit court committed no error in refusing to stay the proceedings to await the determination of the question of appellant's discharge as a bankrupt.

There are other grounds upon which this case might well have been affirmed, but we deem it best to dispose of it upon its merits and have accordingly done so.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE SCOTT:    I do not concur in the construction given to the sections of the Bankrupt act cited in the opinion of the court.