THE PEOPLE *ex rel.* Felix F. Krause

*v.*

CARTER H. HARRISON *et al.*

*Opinion filed June 19, 1901—Rehearing denied October 8, 1901.*

1. STATUTES—*statute should be construed so as to give effect to the main intent.* The several provisions of a statute should be construed together in the light of the general objects and purposes of the enactment and so as to give effect to the main intent, even though particular provisions are not construed literally.

2. SAME—*in construing a statute the court will have regard for contemporaneous conditions.* In determining the meaning of a statute the court will have regard to existing circumstances or contemporaneous conditions, and will also look to the objects sought to be obtained by the act and the necessity for its adoption.

3. INTOXICATING LIQUORS—*section 18 of Annexation act, preserving dram-shop ordinances, construed.* The provision of section 18 of the Annexation act, preserving in full force all ordinances of the annexed territory "whereby the licensing of dram-shops is prohibited or regulated," means all ordinances entitled "dram-shops," and which were enacted to license and regulate the sale of intoxicants.

4. SAME—*section 18 of Annexation act preserves in force all the Hyde Park liquor ordinances.* Under section 18 of the Annexation act all of the Hyde Park liquor ordinances in force at the time of the annexation of the village of Hyde Park to the city of Chicago are preserved in full force for all time to come, except as they may be changed in the manner provided in such section.

MAGRUDER, J., dissenting.

*Harrison v. People ex rel.* 92 Ill. App. 643, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. E. F. DUNNE, Judge, presiding.

MORAN, MAYER & MEYER, for appellant:

At the time of the annexation of Hyde Park to the city of Chicago, June 29, 1889, the territory comprising the village of Hyde Park became subject to all existing and future ordinances of the city of Chicago, save only as the Hyde Park ordinance with reference to dram-

191—17

shops was continued in force by operation of said Annexation act. Starr & Cur. Stat. 797, 799; *McGurn* v. *Board of Education*, 133 Ill. 122; *People* v. *Cregier*, 138 id. 461; *Railway Co.* v. *Chicago*, 143 id. 641; *People* v. *Brown*, 83 id. 95; *Cicero* v. *Chicago*, 182 id. 301.

Only the provisions of the ordinance of the village of Hyde Park regulating and prohibiting the licensing of dram-shops were kept in force by the Annexation act. 1 Starr & Cur. Stat. sec. 18, p. 798; Rev. Code of Chicago, art. 3, chap. 39; Rev. Mun. Code of Chicago, sec. 1188.

A dram-shop or saloon is a place where spirituous or vinous or malt liquors are retailed in less quantities than one gallon. Rev. Stat. chap. 43, sec. 1; Hyde Park Ordinance, March 28, 1887, chap. 15, sec. 2.

A person who sells liquor in quantities of one gallon or more is a wholesale dealer, as contradistinguished from the keeper of a dram-shop or saloon. *Dennehy* v. *Chicago*, 120 Ill. 627; *Monmouth* v. *Popel*, 183 id. 634.

Charles M. Walker, Corporation Counsel, and Roswell B. Mason, Assistant Corporation Counsel, (Walker & Payne, and Edwin Burritt Smith, of counsel,) for appellees:

Chapter 15 of the Revised Municipal Code of the village of Hyde Park, as amended May 8, 1889, and June 24, 1889, was kept in full force and effect by section 18 of the Annexation act. Starr & Cur. Stat. sec. 18, p. 805; *People* v. *Cregier*, 138 Ill. 401; *Swift* v. *Klein*, 163 id. 269; *People* v. *Harrison*, 185 id. 307.

The court will take into consideration the purpose for which section 18 of the Annexation act was passed, will consider the conditions prevailing at the time of its passage, and will give effect to its true intent and meaning, even if it were necessary to disregard the strict letter of the statute. *People* v. *Kipley*, 171 Ill. 44; *Hogan* v. *Akin*, 181 id. 448; *People* v. *Chicago*, 152 id. 546; *People* v. *Hoffman*, 97 id. 234; *Anderson* v. *Railroad Co.* 117 id. 26.

The court will not so construe a statute as to cause absurd consequences to follow. Interpretations that lead to an absurdity ought to be rejected. *People* v. *Marshall*, 6 Gilm. 672; *People* v. *Wren*, 4 Scam. 269; *People* v. *Chicago*, 152 Ill. 546; *Railway Co.* v. *Binkert*, 106 id. 298; *Perry County* v. *Jefferson County*, 94 id. 220; *People* v. *Gaulter*, 149 id. 39.

The sale of intoxicating liquor is not a right to be enjoyed by a citizen of the United States or a citizen of this State. By the public policy of this State the sale of intoxicating liquors is regarded as an evil, and all laws relating thereto as restrictive and to be favorably construed by the court. Rev. Stat. chap. 43; *People* v. *Cregier*, 138 Ill. 401; *Swift* v. *People*, 162 id. 534; *People* v. *Harrison*, 185 id. 307; *Crowley* v. *Christensen*, 137 U. S. 86; *Moore* v. *Indianapolis*, 120 Ind. 483.

The writ of *mandamus* is not a writ of right. It should not issue in doubtful cases. It will not be granted where it cannot be seen by the court that it will accomplish a good purpose or that it will have a beneficial effect. The court should be reluctant to coerce, by *mandamus*, the authorities of a municipality. *Swift* v. *Klein*, 163 Ill. 276; *Railway Co.* v. *County Clerk*, 74 id. 27; *Railroad Co.* v. *Suffern*, 129 id. 274; *Elgin Watch Case Co.* v. *Pearson*, 140 id. 423; *People* v. *Village of Crotty*, 93 id. 186; 19 Md. 351.

Per CURIAM: The Branch Appellate Court, in deciding this case, rendered the following opinion:

"This is an appeal from an order of the circuit court granting a peremptory writ of *mandamus* to compel the mayor and certain other officers of the city of Chicago to approve the relator's bond, and to sign and deliver a license to him, authorizing and permitting the said relator to sell and offer for sale within the city of Chicago, at his premises on Cottage Grove avenue, (within what is known as the 'prohibition district' of the former village of Hyde Park,) malt liquors in quantities of one gallon or more at a time, and there to carry on the business

of a wholesale malt liquor dealer.  The petition for the writ set forth that the relator had resided in and carried on at the said premises, constituting a store or place of business, for more than seven years last past, a meat market and grocery business, and during said time was not a brewer or engaged in any other business except as aforesaid.  No question is raised by appellant as to the sufficiency of the allegations of the petition to entitle the relator to the *mandamus* prayed for, if, under the law, he is entitled to a license at the place in which he conducts his business.

"The answer filed in behalf of the respondents raises no issue of fact, and the case was determined by the circuit court as a matter of law arising on the pleadings.

"It was recited in the decree or judgment of the court: 'The relator, and each of the respondents herein, by their respective counsel, having heretofore stipulated and agreed in open court that this cause should be heard by this court on the pleadings now on file and that no evidence shall be introduced on the hearing of this cause; that the material facts, as alleged in said petition, shall be taken as true, except that it is not admitted by the respondents that the ordinances, with their amendments, of the village of Hyde Park, set forth in the petition herein, are no longer in force and effect; and that the court, from the pleadings on file, shall determine, as a question of law, whether the relator is legally entitled to a writ of *mandamus* or whether the respondents are legally justified in refusing to grant the license, as prayed for in said petition.'

"The ordinance under which the relator applied for a license was passed by the city of Chicago, and approved April 9, 1897, being article 3, chapter 39, of the Revised Code of the city of Chicago.

"The village of Hyde Park was annexed to the city of Chicago June 29, 1889, under and in pursuance of an act of the General Assembly of the State to provide for

the annexation of cities, etc., commonly known as the 'Annexation act,' approved and in force April 25, 1889. Section 18 of that act is as follows: 'When a part or the whole of an incorporated town, village or city is annexed, under the provisions of this act, to another city, village or incorporated town, and prior to such annexation an ordinance was in force prohibiting the issuing of licenses to keep dram-shops within said territory so annexed, or any part thereof, or providing that such licenses shall not be issued except upon petition of a majority of the voters residing within a certain distance of such proposed dram-shops, then such ordinance shall continue in full force and effect, notwithstanding such annexation: *Provided,* the city council or board of trustees, as the case may be, may, on petition of one-fourth of the voters of the territory over which said ordinance extends, submit at an annual municipal election, but not oftener than every other municipal election, the question to the voters of such territory whether or not an ordinance shall be passed authorizing the issuing of dram-shop licenses for such territory: *And provided further,* that upon petition in such case of one-fourth of the voters within any part of said annexed territory not less than one-half square mile in extent, asking that any such ordinance shall be continued in force in said portion of said annexed territory, said question of issuing dram-shop licenses shall be submitted separately to the voters of said portion of said annexed territory, and if a majority of the voters voting on such question vote against dram-shops, then said ordinance shall continue in force in said portion of said territory, otherwise not. The ballots cast at such election shall be written or printed, or partly written and partly printed, 'For Dram-shops,' or 'Against Dram-shops,' respectively, and shall be received, canvassed and returned the same as ballots cast at said election for municipal officers, and if it shall appear that a majority of the voters so voting upon the question vote 'For Dram-shops,'

then licenses may be issued for said territory on the same terms and conditions as licenses are granted by ordinance within other parts of the municipality.    It is intended by this section to continue in full force and effect, all ordinances of any municipality, the whole or part of which is annexed to another city, incorporated town or village, whereby the licensing of dram-shops is prohibited or regulated within said city, village or incorporated town, or any part thereof, without the voters of the territory so affected consent, as hereby provided, to the repeal of such ordinance by the city, village or incorporated town to which the territory is annexed.'

"It is set up in the answer of the respondents that section 18 of the Annexation act was passed by the legislature with reference to the annexation of Hyde Park and the protection of its inhabitants in the security afforded to them by the liquor ordinance of that village. But it is in effect argued by the relator that by the terms of that act such ordinances were in fact impaired to the extent of preserving only the licensing, prohibiting and regulating of dram-shops, as such.

"At and before the time Hyde Park was annexed to Chicago there were in force in that village certain ordinances placing restrictions upon the liquor traffic within its boundaries.    These are shown in chapter 15 of the Revised Municipal Code of the village (consisting of twenty-one sections) entitled 'Dram-shops,' and in two amendments thereto, which became laws on May 8, 1889, and June 24, 1889.    This last amendment became a law only five days before annexation was accomplished. Without reproducing these several ordinances and amendments, it is enough to say of them that before the annexation of Hyde Park, and while they were unquestionably in force, it would not have been possible for a license such as is here involved to have been granted.

"The gist of the argument of the relator is based upon the proposition that only the provisions of the Hyde

Park ordinances prohibiting and regulating the licensing of dram-shops were kept in force by the Annexation act. We are free to admit that in the absence of countervailing legislation the ordinances of Chicago, upon the annexation of Hyde Park, *eo instanti*, of their own vigor, extended to and became operative over the annexed territory, and that from that instant the territory annexed became a constituent part of the city, and subject to the same laws, the same municipal organization and the same polity which the statutes in force had already provided for the government of the city and its institutions. (*McGurn* v. *Board of Education*, 133 Ill. 122; *People ex rel.* v. *Cregier*, 138 id. 401.) Of course, such being the law as to the extension of existing ordinances over annexed territory, subsequent ordinances of the city to which annexation has been made would have at least equal vigor over the annexed territory, in the absence of a statute saving to such territory the force of its own former ordinances.

"At the time Hyde Park was annexed there was in force in Chicago an ordinance of that city passed January 29, 1883, regulating the sale of ale, beer or other malt liquors in quantities in excess of one gallon at one time, and the contention of the relator is that that ordinance became at once operative in the annexed district of Hyde Park, and governed in that regard until the passage by the city of Chicago, on April 9, 1897, of an ordinance relating to the licensing of wholesale malt liquor dealers. That ordinance permitted the selling, by grocers, of malt liquors in quantities of one gallon or more at a time, they first having obtained a license therefor, and it is under that ordinance that the relator has asked for the *mandamus* in question. The question then recurs, did section 18 of the Annexation act keep in force the ordinances of Hyde Park relating to the subject in controversy?

"Coming to read the ordinance of Hyde Park, as embodied in chapter 15 of its Revised Code of 1887, and the ordinances amendatory thereof, it is apparent that the

whole subject of liquor traffic within the limits of that village was covered, and not merely the keeping of dram-shops. They provided for the creation of prohibition districts, (and the place in question is included therein,) within which no license for the keeping of a saloon or dram-shop could be granted, and prohibited the granting of licenses anywhere in Hyde Park for the sale of liquor in quantities less than four gallons in a single package, except at a regularly licensed saloon or dram-shop. They also provided for the licensing of wagons for the delivery of beer and other liquors in quantities not less than one gallon in a single package to one person. There are numerous other provisions not necessary to be mentioned. Now, is it reasonable to suppose that the legislature intended by section 18 of the Annexation act to sweep away all these provisions, except so far as the regulation and enforcing of the keeping of a saloon or dram-shop is concerned? That act was passed in April, 1889,—about two months before annexation took place. The amendatory ordinances of Hyde Park, which are of particular applicability to the subject, were passed May 8, 1889, and June 24, 1889. Annexation took place June 29, 1889.

"It appears by the answer of the respondents that the Annexation act 'was passed by the legislature with reference to the ordinances of the village of Hyde Park, and more especially to chapter 15 of the Revised Municipal Code of the village of Hyde Park, 1887, as amended by the amendments of May 8, 1889, and June 24, 1889.' The concluding part of said section 18, as before quoted, is as follows: 'It is intended by this section to continue in full force and effect, all ordinances of any municipality, the whole or part of which is annexed to another city, incorporated town or village, whereby the licensing of dram-shops is prohibited or regulated within said city, village or incorporated town, or any part thereof, without the voters of the territory so affected consent, as hereby provided, to the repeal of such ordinance by the

city, village or incorporated town to which the territory is annexed.' The word 'whereby,' there employed, is not intended to limit the effect of the saving clause of the section to dram-shops, as such, alone, but means all ordinances entitled 'Dram-shops.' 'Dram-shops,' as used in that connection, is generic, and means the liquor traffic generally. Chapter 43 of the Revised Statutes is entitled 'Dram-shops,' and is a single chapter relating to the liquor traffic, generally. As used in that connection, the word includes in its meaning all matters there enacted with reference to licensing and regulating the evils arising from the sale of intoxicating liquors, as appears by the title of the act shown in the statute. (Hurd's Stat. 1899, chap. 43.) And so in the fore part of the section, the provision that 'such ordinance shall continue in full force and effect,' means the whole of the ordinance, and not a special section of it. In accordance with this view the Supreme Court, when considering the same section, said: 'It was expressly declared to be the intention of said section to continue in full force and effect all ordinances of any municipality, the whole or part of which should be annexed to the city, whereby the licensing of dram-shops was prohibited or regulated in the annexed territory, until the voters of the territory affected by the ordinance should consent to its repeal.' (*People ex rel.* v. *Cregier*, 138 Ill. 401.) In the same case (p. 423) the court holds that there is no possible ground for doubting the applicability of section 18 to the ordinances of Hyde Park in force at the time of the annexation, and that they were continued in force notwithstanding the annexation, and were placed beyond repeal by the city council of the city of Chicago. Any other holding by us than that the whole ordinance was meant by the statute would lead to absurd and most mischievous consequences.

"The answer of the respondents expressly set up that the statute was passed with reference to the annexation of Hyde Park. The purpose of the section being to se-

cure to Hyde Park its prohibition districts and to secure and regulate the liquor traffic within its territory, that object should be kept in mind, and words used in the statute should be construed liberally to that end.

"We are not without abundant authority on this question. The statutes of the State provide, with reference to the construction of the statutes: 'All general provisions, terms, phrases and expressions shall be liberally construed, in order that the true intent and meaning of the legislature may be fully carried out.' (First paragraph of sec. 1, chap. 131.) So it is said in *People v. Wren*, 4 Scam. 269, (at p. 277): 'It is a well established rule in the construction of statutes, that where great inconvenience or absurd consequences are to result from a particular construction that construction should be avoided, unless the meaning of the legislature be plain and manifest.' In *People* v. *City of Chicago*, 152 Ill. 546, the rule is stated as follows: 'It may be well to here call attention to some of the rules which should influence the court in interpreting the statute now in question. The General Assembly, in the act revising the law in relation to the construction of the statutes, lays down as the first rule to be observed, the following: 'All general provisions, terms, phrases and expressions shall be liberally construed, in order that the true intent and meaning of the legislature may be fully carried out.' (2 Starr & Curtis, chap. 131, sec. 1.) A thing within the intention is regarded as within the statute though not within the letter, and a thing within the letter is not within the statute unless within the intention. (*Perry County* v. *Jefferson County*, 94 Ill. 214; *People* v. *Hoffman*, 97 id. 234; *Anderson* v. *Chicago, Burlington and Quincy Railroad Co.* 117 id. 26.) The several provisions of the statute should be construed together in the light of the general objects and purposes of the enactment, and so as to give effect to the main intent, although particular provisions are thus construed not according to their literal reading. (*Hill* v. *Harding*, 93 Ill. 77; *Wabash*,

*St. Louis and Pacific Railway Co.* v. *Binkert,* 106 id. 298.) The intention is to be gathered from the necessity or reason of the enactment, and the meaning of words enlarged or restricted according to the true intent. (*Castner* v. *Walrod,* 83 Ill. 171; *Cruse* v. *Aden,* 127 id. 231.) That which is implied is as much a part of the statute as that which is expressed.' (Potter's Dwarris, 145; *United States* v. *Babbit,* 1 Black, 55.) When the literal enforcement of a statute would result in great inconvenience and cause great injustice, and lead to consequences which are absurd and which the legislature could not have contemplated, the courts are bound to presume that such consequences were not intended, and adopt a construction which will promote the ends of justice and avoid the absurdity.—*Bryan* v. *Buckmaster,* Breese, 408; *People* v. *Marshall,* 1 Gilm. 672.' In *People* v. *Kipley,* 171 Ill. 44, (at p. 77,) the court says: 'In determining the meaning of a statute the court will have regard to existing circumstances or contemporaneous conditions, and also to the objects sought to be obtained by the statute and the necessity or want of necessity for its adoption.' The late expression of the Supreme Court in *Hogan* v. *Akin,* 181 Ill. 448, by Chief Justice CARTWRIGHT, is: 'It is true, we cannot disregard a provision of that kind appearing to be within the intention of the law-makers, but the purpose of construction is to find and give effect to such intention. * * * In seeking for such intention we are to consider not only the language used by the legislature, but also the evil to be remedied and the object to be attained.'

"There cannot, in our opinion, be any doubt it was the intention of the legislature, and of the lawfully constituted authorities of Hyde Park as well, that there should be preserved to the annexed territory all of the Hyde Park liquor ordinances in force at the time of annexation, for all time to come, except as they provide for a change therein, and that, as said in the *Cregier case, supra,* they were placed beyond repeal by the city of Chicago.

We agree with the contention of counsel for the relator that *mandamus* is a proper way to test the question, and was an appropriate remedy for the relator.

"The argument that the amendatory ordinance of Hyde Park, passed June 24, 1889, is void because of making an unjust discrimination between persons who may sell liquor in less quantities than four gallons in a package, does not seem to us to require particular answer. It deprives relator of nothing he asks for that he has an inherent right to.

"The judgment or order of the circuit court is reversed, with directions to dismiss relator's petition."

We concur in the foregoing views and in the conclusions above announced. Accordingly the judgment of the Branch Appellate Court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE MAGRUDER, dissenting:

I am unable to concur in this decision. The construction, which it gives to the act of the legislature of Illinois known as the "Annexation act," is strained and unnatural. The simple question in this case is: what kind of ordinances relating to the liquor traffic, which were in force in the village of Hyde Park at the time of its annexation to the city of Chicago, were continued in force after such annexation? This question is to be determined mainly by considering the language and terms of the Annexation act itself. That act was approved and went into force on April 25, 1889, and, under it, the village of Hyde Park was annexed to the city of Chicago on June 29, 1889.

Section 18 of the Annexation act of 1889 provides as follows: "When a part or the whole of an incorporated town, village or city is annexed, under the provisions of this act, to another city, village or incorporated town, and prior to such annexation an ordinance was in force prohibiting the issuing of licenses to keep dram-shops

within said territory so annexed, or any part thereof, or, providing that such licenses shall not be issued except upon petition of a majority of the voters residing within a certain distance of such proposed dram-shops, then such ordinance shall continue in full force and effect, notwithstanding such annexation," etc. (1 Starr & Curt. Ann. Stat.—2d ed.—805.)

Manifestly, by the terms of section 18 as above quoted, the ordinances continued in force after annexation were ordinances prohibiting the issuing of licenses to keep dram-shops within the territory annexed. No other kind of ordinances were continued in force by the act. As if to emphasize the language above quoted from the first part of section 18 of the act, the last sentence of said section 18 declares more specifically the intention of the legislature by the use of the following words: "It is intended by this section to continue in full force and effect all ordinances of any municipality, the whole or part of which is annexed to another city, incorporated town or village, whereby the licensing of dram-shops is prohibited or regulated within said city, village or incorporated town, or any part thereof," etc. (Ibid).

It could not be stated in terms plainer and clearer than the terms, above used, that the ordinances to be continued in force by the Annexation act were ordinances prohibiting or regulating the licensing of dram-shops.

What is a dram-shop? Section 1 of the act of 1874 in regard to "dram-shops" thus defines a dram-shop: "A dram-shop is a place where spirituous or vinous or malt liquors are retailed by less quantity than one gallon." (2 Starr & Curt. Ann. Stat.—2d ed.—p. 1587). Section 2 of the revised municipal code of Hyde Park, adopted in 1887 and in force when the annexation of that village to the city of Chicago took place, adopts the same definition by the use of the following words: "A dram-shop or saloon is a place where spirituous, vinous or malt liquors

are retailed in less quantities than one gallon." Section 21 of said municipal code of Hyde Park provides that, within a certain territory described in that section, "no license shall be issued to keep a saloon or dram-shop."

. Section 18 of the Annexation act is, therefore, to be read as though it provided for the continuance in force after annexation of ordinances, prohibiting the issuing of licenses to keep places where spirituous or vinous or malt liquors are retailed by less quantity than one gallon. The object of the *mandamus* in the present case is to compel the issuance of a license to the relator, authorizing him to sell and offer for sale malt liquors in quantities of one gallon or more. There is nothing in the terms of the Annexation act, under which the village of Hyde Park was annexed to the city of Chicago, which forbids the issuance of such a license to the relator.

This court has recognized in a number of cases the distinction between regulating the sales of liquors in dram-shops, where less quanties than one gallon may be sold, and regulating the sales of liquors in quantities above one gallon. (*Dennehy* v. *City of Chicago*, 120 Ill. 627; *City of Cairo* v. *Feuchter*, 159 id. 155; *City of Monmouth* v. *Popel*, 183 id. 634). An ordinance, regulating or prohibiting the licensing of dram-shops, necessarily regulates the sales of liquors in quantities of less than one gallon. Such an ordinance is not a regulation of the sale of liquors in quantities above one gallon.

This construction of the language of section 18 of the Annexation act was recognized and adopted by this court in the case of *People* v. *Cregier*, 138 Ill. 401, where it is said (p. 422): "It was expressly declared to be the intention of said section to continue in full force and effect all ordinances of any municipality, the whole or part of which should be annexed to the city, whereby the licensing of dram-shops was prohibited or regulated in the annexed territory, until the voters of the territory affected by the ordinance should consent to its repeal."

It is unnecessary to resort to established rules of construction, such as are referred to in the majority opinion, in order to determine the meaning of the word "dram-shop." That word has a well defined and well expressed meaning, given to it by the law itself. The statute defines a dram-shop to be a place where liquors are retailed in less quantities than one gallon, and a resort to rules of construction is unnecessary to determine the meaning of this definition. The Supreme Court of the United States has said that "the province of construction lies wholly within the domain of ambiguity." (*Hamilton* v. *Rathbone*, 175 U. S. 421). Where there is no uncertainty or ambiguity in a statute, there is no necessity for construction.

In *Ottawa Gaslight Co.* v. *Downey*, 127 Ill. 201, we said: "Courts cannot, as a general rule, disregard the plain language of a statute. It is their duty to accept it as they find it, and enforce it as it is plainly written." The disregard by the court of an unambiguous word of a statute is an assumption of legislative power. There can be no departure from the plain meaning of a statute on the grounds of unwisdom or of public policy. (Sedgwick on Statutes, sec. 271; *United States* v. *Fisher*, 2 Branch, 399; *St. Paul Railway Co.* v. *Phelps*, 137 U. S. 528). We said in *Wunderle* v. *Wunderle*, 144 Ill. 40: "It is not the province of the judiciary to make laws, but to construe and interpret them and pass upon their validity. * * * Where the construction given to the words of a statute is variant from their strict and literal meaning, such construction is only justified upon the ground that it effectuates the intention of the legislature as manifestly disclosed by a consideration of the whole context."

To give to the words of section 18 of the Annexation act the construction that all ordinances of cities, towns and villages annexed thereunder, as well those prohibiting the issuing of licenses to sell and offer for sale malt liquors in quantities of one gallon or more as those prohibiting the issuing of licenses to keep places where

liquors are retailed in less quantities than one gallon, is to give to the words of the act a construction which is variant from their strict and literal meaning, and which is not justified upon the ground that it effectuates the intention of the legislature.