Edward J. Jacob, Appellee, v. City of Peoria, Appellant.

Gen. No. 8,321.

Heard in this court at the February term, 1931.
Opinion filed March 18, 1931.

R. H. RADLEY, for appellant.

IRA J. COVEY and EDWIN L. COVEY, for appellee.

MR. JUSTICE JONES delivered the opinion of the court.

The plaintiff, Edward J. Jacob, was engaged by the election commissioners of the City of Peoria to print the specimen ballots, official ballots, and cards of instructions to voters for the general primary election of April 8, 1930, to be used in that city. The primary was for the nomination of candidates for the United States senate, State officers, county officers, and other

officers as provided by law. Plaintiff fully complied with his contract and his charges amounted to $4,087. He rendered a bill for that sum to the election commissioners, who approved and transmitted it to the city council of the City of Peoria. The city council rejected it on the ground "that the said bill is for the printing of ballots and cards of instruction to voters for an election for the choice of national, state, and county officers, and as such, is not a proper charge against the City of Peoria." This suit in assumpsit was thereupon brought against the city. The original declaration contained only the common counts, but later a special count was filed and the common counts dismissed. A demurrer to the special count was overruled. The city elected to abide by its demurrer and a judgment was rendered in favor of the plaintiff and against the city for the full amount of the claim and costs of suit.

The City of Peoria, by a popular vote in 1914, adopted the benefits of "An Act regulating the holding of elections and declaring the result thereof in cities, villages, and incorporated towns in this State." This Act is known as the "City Election Act" and was passed and approved in 1885. Section 1 of Art. VII of said Act, Cahill's St. ch. 46, ¶ 358, after providing that counties shall pay the salaries of the commissioners and chief clerks, contains the following language:—"All expenses incurred by such board of election commissioners shall be paid by such city."

It is the contention of the plaintiff that the expenses of printing ballots and instruction cards for a general primary election are chargeable against the city by reason of the above quoted provision of section 1 of Art. VII of the City Elections Act, Cahill's St. ch. 46, ¶ 358; but the city contends those expenses are chargeable against the county of Peoria, under the provisions of sections 1 and 2 of "An Act to provide for the

printing and distribution of ballots at public expense and for the nomination of candidates for public offices, to regulate the manner of holding elections and to enforce the secrecy of the ballot.'', as approved June 22, 1891, Cahill's St. ch. 46, ¶¶ 202 and 203. This Act is known as the ''Ballot Law.'' Section 1 thereof requires that in all elections (with a few specified exceptions), the voting shall be by ballots printed and distributed at public expense as thereinafter provided, and no other ballot shall be used. This pertinent observation may be here made:—prior to the enactment of that section, there was no law providing for the printing and distribution of ballots at public expense. Theretofore any candidate, set of candidates, groups, or political parties could have ballots printed and distributed upon the streets and at the polls at their own expense. Voters were publicly and openly importuned. It was not a public function to print and distribute ballots. Up to 1891, the only statutory provision concerning the preparation of ballots was to be found in sections 52 and 53 of the Election Act of 1872, Cahill's St. ch. 46, ¶¶ 53 and 54. Those sections are as follows:

''Sec. 52. The manner of voting shall be by ballot. The ballot shall be printed or written, or partly printed and partly written, upon plain paper, with the name of each candidate voted for, and the title of the officers. When the ballot is printed, the same shall be printed upon plain paper, in plain type, in straight lines, with a blank space below each name, of a width not less than equal to the width of the line in which the name is printed.''

''Sec. 53. The names of all candidates for which the elector intends to vote shall be written or printed upon the same ballot and the office to which he desires each to be elected shall be designated upon the ballot.''

The Constitution of 1870 contains the simple provision that all votes shall be by ballot. (Const. 1870,

Art. VII. sec. 2.) This provision was taken from the Constitution of 1848. (Const. 1848, Art. VI, sec. 2.) The Constitution of 1818 (Art. II. sec. 28) required all votes to be given *viva voce* until altered by the General Assembly. By an act of that body, effective June 1, 1829, it was provided, by section 10 thereof, that ''The manner of voting shall be by the elector's approaching the bar, in the election room, at any time when the poll is open, and addressing the judges of the election in his proper person, and with an audible voice, to be heard by the judges and clerks of the election, to mention by name the persons he intends to vote for to fill the different offices, which are to be filled at the said election and the clerk shall enter his name and vote accordingly, and he shall then withdraw: *Provided*, that a voter may vote by presenting an open ticket to the judges containing the names of the persons for whom he votes and the offices; and the said judges shall read the same to the voter and the clerks with the assent of the voter, set the same down in their books as in other cases.'' These provisions were substantially re-enacted in section 15 of the Elections Law of 1845.

This historical review convincingly discloses the fact to be that the General Assembly of the State of Illinois at no time prior to the enactment of the Ballot Law of 1891 ever contemplated the printing of ballots at public expense, and consequently no law enacted before that time ever provided for the payment of the expense of printing ballots. Open ballots and oral declarations of the voters had been a fixed policy, but this policy was abandoned by the enactment of the law of 1891, requiring closed and secret ballots to be printed and distributed at public expense.

It needs no argument to fortify the assertion that if the only law which ever required the printing of ballots at public expense, further provided what gov-

ernmental body should pay it, that law is controlling upon the question of expense to the exclusion of all other laws. Section 2 of the Ballot Law, Cahill's St. ch. 46, ¶ 203, does that precise thing. By unambiguous language, it provides that the printing and delivery of the ballots and cards of instruction, shall (1) for municipal elections in cities, villages, and incorporated towns be paid for by such cities, villages, and incorporated towns, and (2) in town elections by the town, and (3) in all other elections, the printing of ballots and cards of instruction for the voters of a county shall be paid for by the county. The term "general election" is defined to be any election held for the choice of a national, state, judicial, or county officer. The term "city election" is defined to be any municipal election held in a city, village, or incorporated town.

There is little room for confusion over the provisions of this section. The expense of printing ballots for city elections shall be paid by the municipality. The expense for town elections shall be paid by the town, and the expense for every "general election," as above defined, shall be paid by the county.

The election for which the ballots were printed was held under the Primary Elections Law and not the Ballot Act. However, section 25 of the Primary Elections Law, Cahill's St. ch. 46, ¶ 460(25), provides that the expenses of conducting such primary . . . shall be paid in the same manner and by the same authorities or officers respectively as in the case of elections. Therefore the liability for the expense of printing ballots for a primary is the same as it is for an election.

Section 15 of the Ballot Law, Cahill's St. ch. 46, ¶ 218, designates the officers who shall have charge of the printing and distribution of the ballots. County clerks are charged with the printing and distribution of ballots for all general elections in their respective

counties. City, town, and village clerks are charged with the printing and distribution of ballots for all city elections, and town clerks are charged with the printing and distribution of ballots in all town elections. In order that there might not be any overlapping of duties or responsibilities in counties containing one or more cities which have adopted the City Elections Act of 1885, a proviso was incorporated in said section 15 of the Ballot Law to the effect that in cities, towns, and villages having a board of election commissioners, such board shall have charge of the printing and distribution of the ballots to the judges of the elections within the territory under their jurisdiction. This section is silent about the expenses of printing ballots, and nowhere in the Act can anything be found which either expressly or by implication places the liability for such expenses upon any body politic, except the county. The Ballot Law is complete within itself. Its general provisions were borrowed from an Australian Ballot Law. Its principal objective was to enforce the secrecy of the ballot as contra-distinguished from the old *viva voce* or the open ballot system of voting. In order to obtain that end, complete and comprehensive provisions were made for the printing and distribution of ballots at public expense. It made no reference whatever to the City Elections Act of 1885. It was not amendatory of that Act nor did it engraft any of the provisions of that Act into its scheme for enforcing the secrecy of the ballot by printing and distributing ballots at public expense.

The argument that cities which have adopted the City Election Act must pay for the printing of ballots used at a general election centers around the language of said section 1 of Art. VII of said Act, Cahill's St. ch. 46, ¶ 358. As heretofore noted, that section provides that the county shall pay the salaries of the commissioners and chief clerks and then provides that

"all expenses incurred by such board of election commissioners shall be paid by such city." Manifestly the expense of printing ballots was not within the purview of that Act, for such an expense was unheard of and not contemplated in 1885, when it was passed. The words "all expenses incurred" could have had no other meaning than all legal expenses incurred. The cost of printing ballots was not a legal expense at that time and did not become so until 6 years later when such an expense was commanded and definite provisions for its payment were prescribed by the Ballot Law of 1891.

But it is said that because the City Elections Act has been repeatedly amended since the passage of the Ballot Law and the provision that "all expenses incurred by such board of election commissioners shall be paid by such city" has been carried forward each time as a part of the Act as amended, therefore, it was the intention of the legislature to add the burden of printing ballots to such cities.

There is never any need for construction when a statute is plain and unambiguous. (*People v. Atchison, Topeka & Santa Fé Ry. Co.*, 201 Ill. 365.) In determining the meaning of the statute, the court will have regard to existing circumstances or contemporaneous conditions, and will also look to the objects sought to be obtained by the act and the necessity for its adoption. (*People v. Harrison*, 191 Ill. 257.) And the circumstances surrounding the enactment must be kept in mind. (*Alton & Southern R. Co. v. Vandalia R. Co.*, 268 Ill. 68; *People v. Fox*, 269 Ill. 300; *Dole v. Hardinger*, 204 Ill. App. 640; *Hoyne v. Danisch*, 264 Ill. 467.)

The contention that subsequent amendments to the City Elections Act which did not change the phraseology of section 1 of Art. VII have given the section a different meaning than it originally had, does vio-

lence to well established principles of statutory construction. Bearing in mind that the legislature, in enacting that section, did not contemplate the printing of ballots at public expense, no number of subsequent amendments to it would be sufficient to change the meaning of the language originally employed and carried forward into such amendments. The meaning which the language originally had must be accepted in the same sense in subsequent enactments, unless the contrary clearly appears from the context of the amendment. A statute does not operate retrospectively, unless the intention of the General Assembly to give it such effect is clearly and unequivocally shown by its provisions. (*People v. New York, C. & St. L. Ry. Co.,* 316 Ill. 452.) In *Svenson v. Hanson,* 289 Ill. 242, it was contended that section 5 of the Conveyance Act of 1827, was repealed by the amendatory Act of 1917. The court held that "It is a familiar rule, that when the legislature enacts an amendatory statute, providing that a certain act shall be amended so as to read as repeated in the amendatory act, and no change is made in the wording of the old act, such portions of the old law as are repeated, either literally or substantially, in the new act are to be regarded as a continuation of the old law and not the enactment of a new law on that subject."

The Supreme Court in *Spiehs v. Insull,* 278 Ill. 184, commented on the meaning of section 81 of the Practice Act, with special reference to the provisions concerning extensions of time for filing a bill of exceptions, and said, "This part of section 81 was retained in the amended section without change. It is elementary that when the legislature, by an amendatory act, retains in a new statute the same words and phraseology that had been contained in a former statute, it must be presumed that it used such words and phraseology in the sense that had already been placed upon

them by judicial construction. (Citing cases.) Indeed, this result is especially provided by section 2 of chapter 131 of our statutes, which reads: 'The provisions of any statute, so far as they are the same as those of any prior statute, shall be construed as a continuation of such prior provisions, and not as a new enactment.' ''

When the General Assembly amends a statute and no change is made in parts of it, the repeated portions, either literally or substantially, are regarded as a continuation of the existing law and not as an enactment of a new law upon the subject. (*People v. New York, C. & St. L. Ry. Co., supra;* and cases cited.) If the language employed in section 1 of Art. VII of the City Elections Act was not intended in 1885 to impose a liability for printing ballots upon a municipality, then that language, when re-employed in a subsequent statute, can have no meaning different than that which it had in the prior statute.

Applying the above rules of construction, but one deduction can be made, and that is that neither the City Elections Act of 1885 nor any of the subsequent amendments thereto have ever provided that cities shall pay the cost of printing ballots for a general election.

While amendments have been made to certain sections of the Act of 1885, expressly casting the burden of election expenses upon various governmental bodies, no such amendment has ever been made to section 1 of Art. VII. For instance, in 1911, the legislature amended section 5 of Art. VII by requiring a township to pay all expenses connected with the registration and election of township officers only, and again in 1917, that section was further amended by requiring park boards and school boards to pay all expenses of an election held for the purpose of electing a member of a board, or for the purpose of voting upon a proposition or propositions submitted by any such board and for

no other purpose. But the only provision which can be found anywhere for the payment of expenses of printing ballots for a general election is contained in section 2 of the Ballot Act of 1891, Cahill's St. ch. 46, ¶ 203.

Several Supreme Court cases have been cited by appellee to support his contention that the defendant city is liable, but they are not in point upon the question in this case and are readily distinguishable both as to the facts and the law.

*Wetherell v. Devine,* 116 Ill. 631, was decided in 1886. The constitutionality of the City Election Law of 1885 was challenged by a bill in chancery to enjoin the paying of warrants drawn by the county judge for expenses incurred by the board of election commissioners. No evidence was heard, but a demurrer to the bill having been sustained, the bill was dismissed and an appeal taken. The Supreme Court held the Act valid and affirmed the decree which dismissed the bill for want of equity. The case did not and could not involve expense created under the Act of 1891.

*Bolles v. Prince,* 250 Ill. 36, related to the expenses of conducting the registration and election in that part of the town of Danville which is located within the City of Danville. The item of expense included compensation of judges and clerks of election, rent, and printing. Whether or not the item of printing included the expense of ballots is not disclosed by the opinion. If such item was not for printing ballots, but was for printing notices, poll books, or registration books, then every item mentioned comes definitely within the purview of legal expenses contemplated by the Act of 1885. We assume the item was not for printing ballots, because the opinion nowhere makes reference to the Ballot Law. The decision rests solely upon a consideration of the constitutionality of the City Elections Act.

*Johnson v. County of Winnebago,* 256 Ill. 276, involved only miscellaneous election expenses comprehended by the Act of 1885 and did not involve any cost of printing ballots. The views expressed by us are entirely compatible with the decision in that case, in which the Supreme Court said that "The expenses here involved undoubtedly come under the heading of 'miscellaneous expenses' and having been incurred by the board of election commissioners, under the holding in the *Bolles* case, must be paid by the City of Rockford." It may be taken as a natural corollary that if charges do not come under the heading of "miscellaneous expenses" but come under the heading of "printing ballots" as provided for by the Act of 1891, then the expense must be paid according to the provisions of that Act, and not according to the provisions of the Act of 1885.

*Renneker Co. v. South Park Com'rs,* 332 Ill. 393, is the only ballot printing case cited. The question in that case was whether the City of Chicago or the park board should pay the expense of printing ballots to be used solely within the park district in voting upon a proposed bond issue of the district. The election in the park district was held on the same day as the general election of November 4, 1924. Because of this coincidence, the park board claimed the expense of printing all ballots, including those on the bond issue proposition, was upon the city and that the election commissioners having ordered the printing, the city was liable for the expenses thereof. The Supreme Court held that "The fact that the election upon the question of issuing bonds by the park commissioners was called and held the same day as the general election does not change the character of the election as to the bond issue. Upon that question the election was a special election. (Citing cases.) The park bond issue election was a special election for the purpose of

voting on one question only, notwithstanding it was held at the same time the general election was held, and paragraph 362 of the statute (City Election Act, Sec. 2, Art. VII) provides that the park board 'shall pay the expenses of such election.' "

A study of the above cases will show that the question in this case was not involved in any of them. There is no doubt that the legislature has authority to make an apportionment of the expense of elections among the various governmental subdivisions of the State and require each to bear its portion. In exercising that right, it has determined what subdivision shall pay the compensation of judges and clerks and other election officials; what subdivision shall defray the miscellaneous election expenses; what subdivision shall pay the cost of printing ballots in general elections; and what subdivision shall defray the expenses in certain special elections. The provision of law for defraying the cost of printing ballots in general elections is definitely placed upon the respective counties and nowhere else. The cost of printing ballots for primaries to nominate national, state, and county candidates is the same. Hence we conclude that the demurrer in this case should have been sustained and the judgment herein is accordingly reversed and the cause remanded with directions to the circuit court to sustain the demurrer, and to enter such further orders as will be in conformity with the views we have expressed.

*Reversed and remanded with directions.*